**Debra Lynn CLARK, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 508–84.

Court of Criminal Appeals of Texas, En Banc.

Oct. 15, 1986.
On Rehearing Feb. 11, 1987.

Douglas W. Skemp (on appeal only), Dallas, for appellant.

Henry Wade, Dist. Atty., & Molly Meredith, Constance M. Maher, Ruth Plagenhoef, Steven Springer & Denver McCarty, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted by a jury of the offense of theft of property of the value of at least $10,000. See V.T.C.A. Penal Code, § 31.03(a) (Supp.1986). Punishment was assessed at ten years confinement in the Texas Department of Corrections. In an unpublished opinion, the Court of Appeals affirmed. *Clark v. State,* No. 05–82–000893–CR (Tex.App.—Dallas, delivered February 21, 1984) (opinion on rehearing). We granted appellant's petition for discretionary review to determine 1) whether an extraneous offense should have been admitted and 2) whether the evidence was sufficient to prove ownership as alleged in the indictment.[1] We will reverse on the first ground for review but find the evidence sufficient to prove ownership in the second ground for review.

While working as a bookkeeper for Orthopedic Associates of Dallas, appellant endorsed 26 insurance checks payable to Orthopedic Associates and deposited them in her personal bank account. The State presented testimony from the vice-president of appellant's bank, the business manager of Orthopedic Associates and a document examiner. The vice-president established that appellant was the sole signatory for her bank account and that the 26 checks had been deposited in her account. The business manager established that she hired appellant as a bookkeeper. Appellant's duties included crediting insurance checks to the proper patient's account, endorsing the checks and preparing a daily deposit ticket. Appellant did not obtain the business manager's consent to endorse insurance checks over to herself, and the business manager testified that she (the business manager) had a greater right to possession of the checks than did appellant. The documents examiner established that appellant had endorsed all of the checks in her own handwriting.

In addition, the State offered proof that appellant had worked for a company called Optical Clinic as an accounts payable clerk after leaving Orthopedic Associates and had forged 14 company checks, making them payable to herself. The same documents examiner established that appellant had forged the checks.

---

1. The indictment, in pertinent part, alleged:
   ... and thereby deprive Rae Barr, the said owner of said property, *in that the said Rae Barr had greater right to possession of the said property than said defendant,* and the said defendant exercised control over the said property without the effective consent of Rae Barr, ... [emphasis added].
   See V.T.C.A. Penal Code, § 1.07(a)(24) (1974).

Prior to introduction of the extraneous transactions involving Optical Clinic, appellant objected and argued that they were inadmissible because the State's witnesses had not been discredited or impeached on cross-examination. The State argued that the extraneous transactions were admissible to show appellant's intent, a common plan and scheme, as well as appellant's identity. The trial court overruled appellant's objection without further explication. In the court's charge to the jury, the trial court instructed the jury that it could only consider the extraneous transactions in determining appellant's state of mind, intent, motive or scheme.[2]

Appellant cross-examined the State's witnesses, largely pointing out that there was no direct evidence of appellant taking checks from Orthopedic Associates. However, appellant did not testify. Nor did she present any defensive testimony.

### I. Extraneous Offenses

The Court of Appeals held that since the State was relying upon circumstantial evidence, it was entitled to introduce evidence of the extraneous forgery offenses to prove appellant's intent and motive to commit theft as well as a common system, scheme or plan. *Clark*, supra, at 3-4.

Appellant argues that the extraneous offenses only served to show appellant's bad character and should not have been admitted. We agree.

This Court must scrutinize those cases wherein prejudicial evidence of extraneous offenses is admitted to prevent a defendant from being convicted of some collateral crime or for being a criminal generally. See *Albrecht v. State*, 486 S.W.2d 97 (Tex. Cr.App.1972). The test for admitting an extraneous offense requires the following:

First, it must be determined that the extraneous offense evidence is relevant to a material issue in the case other than defendant's character. Second, the evidence must possess probative value which outweighs its inflammatory or prejudicial effect.

*Plante*, supra at 491 (Tex.Cr.App.1985) [footnote omitted], citing *Williams v. State*, 662 S.W.2d 344 (Tex.Cr.App.1983).

"[W]here intent or guilty knowledge is an essential element of the offense which the State must prove to obtain a conviction, its materiality goes without saying." *Morgan v. State*, 692 S.W.2d 877, 880 (Tex. Cr.App.1985). In the instant case, the State was required to prove, *inter alia*, that appellant knowingly or intentionally appropriated checks from Orthopedic Associates. Therefore, intent was a material issue.

In weighing probative value against prejudicial effect, this Court has consistently held that the State may not introduce extraneous offenses as circumstantial evidence of an element in its case-in-chief if that element can readily be inferred from other uncontested evidence. *Morgan v. State*, 692 S.W.2d 877, 880 (Tex.Cr.App. 1985); *Robinson v. State*, 701 S.W.2d 895, 898-99 (Tex.Cr.App.1985); *Nance v. State*, 647 S.W.2d 660, 662, quoting *Ruiz v. State*, 579 S.W.2d 206, 209 (Tex.Cr.App.1979) and *Albrecht*, supra, at 101. The State's evidence may be considered contested if "completely undermined by defense cross-examination." *Albrecht*, supra, at 102.

In the instant case, the State introduced the extraneous offenses as circumstantial evidence of appellant's intent to appropriate the checks from Orthopedic Associates. However, appellant's intent could be readily inferred from the abundant circumstantial evidence in the State's case-in-chief. The State offered proof that appellant's signature, in her own handwriting, was present on Orthopedic Associates' checks, and had been deposited into appellant's account. The jury could clearly draw an inference from such evidence that appellant intentionally appropriated the checks for her own use.

---

2. The State did not object to the charge. Nor did the State request, through a special instruction, admission of the extraneous offenses as proof of appellant's identity. See Art. 36.15, V.A.C.C.P. Cf. *Plante v. State*, 692 S.W.2d 487 (Tex.Cr.App.1985)

Although appellant cross-examined the State's witnesses, she did not undermine its case on the issue of intent. At best, appellant emphasized that there was no *direct* evidence that she had committed the instant offense. The cross-examination only suggests the possibility that appellant did not commit the offense because no one saw her commit it, thus tangentially challenging the issue of identity. Even that challenge failed to undermine the State's case because appellant left the State's circumstantial identification evidence largely untouched.

■ Additionally, the probative value of an extraneous offense is dependent upon its similarity to the charged offense. See *Plante,* supra, at 493–94. In fact, a high degree of similarity is required when identity is the issue at bar. *Id,* at 494. In the instant case, the extraneous offenses are dissimilar from the charged offense in a significant respect. Appellant took the checks from Optical Clinic by forgery. There was no forgery involved in the instant case; instead, the checks were removed by direct appropriation. In the absence of a similar modus operandi, the probative value of the extraneous offenses is severely lessened.

■ Under these circumstances, we find that the prejudicial effect of admitting the extraneous offenses outweighed their probative value. Therefore, it was error for the trial court to admit the extraneous offenses.

■ Appellant received a ten year prison sentence, despite being eligible for probation. There is not only a reasonable but distinct possibility that the inadmissible extraneous offenses might have contributed to either the conviction or the punishment assessed. See generally, *Maynard v. State,* 685 S.W.2d 60, 67 (Tex.Cr.App.1985). Therefore, the error was not harmless.

### II. Proof of Ownership

The Court of Appeals, citing *Compton v. State,* 607 S.W.2d 246, 250–251 (Tex.Cr.

App.1980) cert. denied 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 197 (1981), and *Cross v. State,* 590 S.W.2d 510 (Tex.Cr. App.1979), held that there was sufficient evidence for the trier of fact to conclude that the business manager of Orthopedic Associates, Rae Barr, had a greater right to possess the stolen checks than appellant. We agree.

■ This Court recently reaffirmed *Compton,* supra, and, implicitly, *Cross,* supra. *Dingler v. State,* 705 S.W.2d 144 (Tex.Cr.App.1984) (opinion on rehearing) (adopting dissenting opinion on original submission, which relied upon *Compton* and *Cross* ). Applying *Compton* and *Cross* to the instant facts, we find that the State offered sufficient evidence of Rae Barr's managerial authority over appellant and the stolen checks to prove that Barr had a greater right to possess the checks than appellant.[3]

The judgments of the Court of Appeals and the trial court are reversed, and the instant cause is remanded to the trial court.

TOM G. DAVIS and MILLER, JJ., concur in result.

ONION, P.J., and W.C. DAVIS, McCORMICK and WHITE, JJ. dissent.

CLINTON and TEAGUE, JJ. dissent to overruling second ground for review for reasons stated in *Dingler v. State,* 705 S.W.2d 144, 147 (Tex.Cr.App.1984) (Concurring opinion on original submission) and in *Freeman v. State,* 707 S.W.2d 597, 606 (Tex.Cr.App.1986) (Dissenting opinion).

Before the Court en banc.

### OPINION ON STATE'S MOTION FOR REHEARING

PER CURIAM.

The State argues in its motion for rehearing, that our opinion on original submission incorrectly held the extraneous offenses inadmissible in the instant case.

---

**3.** The facts showed that Barr was the business manager of Orthopedic Associates and that she had hired and supervised appellant. Thus, Barr had a greater right to possession of the checks under any theory.

We have reexamined this issue and find that our original opinion was correct.

■ In order for extraneous offenses to be admissible a two-part test must be met. First, the extraneous offense must be relevant to a material issue in the case other than the defendant's character. Second, if the extraneous offense is relevant, it must possess probative value which outweighs its prejudicial effect. *Plante v. State*, 692 S.W.2d 487 (Tex.Cr.App.1985); *Williams v. State*, 662 S.W.2d 344 (Tex.Cr.App.1983).

In applying the admissibility test, relevancy has become largely an issue of similarity. See *Plante*, supra; *Morgan v. State*, 692 S.W.2d 877 (Tex.Cr.App.1985). The similarity of the extraneous offenses to the instant offense makes them clearly relevant to the material issue of intent.[1]

Determining whether the probative value of such extraneous offenses is substantially outweighed by their prejudicial effect is more troublesome. However, several guidelines exist. For example, the State may not introduce evidence of extraneous offenses as circumstantial evidence of an element of its case in chief if that element can readily be inferred from other uncontested evidence. *Morgan*, supra; *Robinson v. State*, 701 S.W.2d 895 (Tex.Cr.App. 1985). This is true because the probative value of the extraneous offenses in such cases is minimal and the introduction of extraneous offenses is inherently prejudicial. Thus, in cases where proof of the act itself provides ample evidence of the element to be proved, and such has not been contested by the defendant, extraneous offense evidence is not generally admissible to prove that element because its probative value is almost always outweighed by its prejudicial effect. *Morgan*, supra.

In the instant case the extraneous offense evidence was introduced to show intent to commit the offense involved. Appellant's actions in signing her own name to twenty-two checks made out to her employer and depositing them into her bank account shows the requisite culpable intent. No evidence was introduced, through direct or cross-examination, to offer any other alternative. Thus, the inclusion of the extraneous offenses was not necessary to shore up the State's case or disprove an otherwise innocent intent. Cf. *Morgan*, supra. Consequently its comparative prejudicial impact outweighed its mimimal probative value in the instant case.

Further, it is clear that appellant was harmed by this inclusion. The State argues that if the acts themselves show intent introduction of the extraneous offense could not have harmed appellant by contributing to her conviction. We agree. By no means dispositive, the introduction and proof of the extraneous offenses virtually doubled the length of appellant's trial. Although appellant was clearly eligible for probation, she received a ten-year prison sentence from the jury. With this in mind we think it reasonable that the introduction of the extraneous offenses contributed to the punishment assessed, if not the actual conviction. See *Maynard v. State*, 685 S.W.2d 60 (Tex.Cr.App.1985). .

Accordingly, our opinion on original submission is affirmed, the judgments of the Court of Appeals and the trial court are reversed and the cause is remanded to the trial court for new trial.

ONION, P.J., and McCORMICK and WHITE, JJ., dissent.

---

1. We agree with the State that the extraneous offenses are similar to the instant offense. The evidence in both reflect that appellant, as an employee, came into possession of blank checks or checks payable to her employers. She forged each check in such a way as to make them ultimately payable to her and she cashed the checks. The fact that some checks required her to fill her name in as payee in the front and same required her endorsement on the back is not a significant dissimilarity under the circumstances of the instant case.