Hussien ALI, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–86–01311–CR.

Court of Appeals of Texas, Dallas.

Nov. 25, 1987.

George Scharmen, San Antonio, for appellant.

Gary A. Moore, Dallas, for appellee.

Before STEPHENS, STEWART and THOMAS, JJ.

STEPHENS, Justice.

Hussien Ali appeals his jury conviction for theft of property of the value of $750 or more, but less than $20,000. The court assessed punishment at twenty years confinement and a $10,000 fine. Ali presents eleven points of error in which he contends that the trial court erred; we disagree and affirm the trial court's judgment.

At trial it was shown that an investigator with the Dallas County District Attorney's office, Murry Reese, accompanied a Kraft Food Services, Inc., driver to the address of Yukahama Sales and Service in Dallas for the purpose of delivering a truck load of goods. Reese and the driver were greeted by Ali and Rasoul Mahammad at that location. In exchange for the goods, Reese was given a $16,161.96 post-dated check. Reese insisted that the date on the check be corrected. After Mahammad corrected the date, the goods were unloaded and placed in another truck by Reese, the driver, and Mahammad. Once the goods were loaded, Mahammad returned to the office and Ali appeared to close up the truck. Ali stated that he would take responsibility for the goods and Reese and the driver left the scene to telephone the bank on which the check was drawn. Reese was told that insufficient funds were on deposit to pay the check. Ali and Mahammad were then arrested for theft of property of the value of at least $750, but less than $20,000.

In his first point of error, Ali claims that the court erred in overruling his motion to dismiss for violation of the Texas Speedy Trial Act.

The Texas Court of Criminal Appeals has declared the Texas Speedy Trial Act unconstitutional in *Meshell v. State*, 739 S.W.2d 246 (Tex.Crim.App., 1987). We overrule Ali's first point of error.

Ali's second point of error is two-fold, he first asserts that: (1) the court erred in admitting evidence of extraneous offenses or Ali's other acts of misconduct, thereby violating the court's order granting his motion in limine; and (2) the court erred in overruling his counsel's objection to the admission of evidence of the extraneous offense and other acts of misconduct.

Ali's motion in limine states:

WHEREFORE counsel prays that the court will instruct the State and its witnesses not to mention, allude to or offer any evidence before the jury concerning the [extraneous offenses or Ali's uncharged acts of misconduct] without first allowing a conference out of the presence of the jury to determine the purpose for offering said evidence and allowing counsel for Defendant to lodge objections out of the jury's presence without having to refer to the evidence objected to within the hearing of the jury.

The trial court granted the motion in limine and complied with it, by refusing to allow testimony from any witnesses concerning Ali's acts of misconduct until after a voir dire hearing had been conducted to allow proper objection. Ali's objections to the extraneous offenses were. noted and overruled by the court. We find no error in the court's action and overrule the first part of Ali's point of error two.

As to the second part of his point of error, Michael Swan, a Kraft Food employee, testified that in January 1986 he talked to and met with Ali in San Antonio. Shortly thereafter, Ali placed an order for cheese and meat products. Upon delivery, the goods were paid for with a post-dated, registered check. Two more orders were placed on February 3 and 4. The orders were delivered on February 5 by Robert Asher, who testified that he watched Ali sign the post-dated check given in payment for the goods.

Swan testified that on February 11 when Ali placed his next order, one of the checks had been returned for insufficient funds. Nevertheless, Kraft Foods filled the order, delivered it to Ali and Mahammad's San Antonio company, but refused to unload it, demanding payment first for the insufficient funds check and the February 11 order. When demand for payment was made, Kraft Foods was informed that "they" had no money. When so informed, the order was not unloaded.

Victor Trevino, a delivery driver for Watkin's Motor Lines in San Antonio, testified that he delivered an order to Ali and was given two post-dated checks in payment. The next day, Trevino was informed by Watkin's that the checks were not acceptable because they were drawn on out-of-state banks. Trevino returned to Ali's office and confronted him about the unacceptable checks; Ali responded by tearing the checks in half, telling Trevino that he had sent someone to get cash for payment. However, after Ali spoke with Watkin's bookkeeper, Trevino was told to leave. Trevino returned with two policemen, but the merchandise he had delivered the previous day could not be located.

■■■ The admissibility of extraneous offenses is determined by a two-part test: (1) it must be relevant to a material issue in the case other than the defendant's character, and (2) its probative value must outweigh its inflammatory or prejudicial effect. *Clark v. State*, 726 S.W.2d 120, 124 (Tex.Crim.App.1986) (op. on reh'g). Extraneous offenses may be admitted in the State's case in chief to prove scienter when intent or guilty knowledge is an essential element of the State's case which cannot be inferred by the act itself. *White v. State*, 632 S.W.2d 752, 754 (Tex.App.—Dallas 1981, no pet.), *quoting*, *Albrecht v. State*, 486 S.W.2d 97 (Tex.Crim.App.1972). Ali was on trial for theft which is defined in Texas Penal Code as: "A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of the property." TEX.PENAL CODE ANN. § 31.03(a) (Vernon Supp.1987). In the present case the indictment charges that:

[the appropriation of property] was without the effective consent in that the consent of the said owner was induced by deception, in that the said property was secured in exchange for [a] check ... and the said defendant created and confirmed the false impression of fact relied upon by the said owner that there were sufficient funds in and on deposit ... for the payment in full of said check and the representation was false and the said

defendant knew the representation was false at the time it was made....

The Penal Code itself provides:

[E]vidence that the actor has previously participated in recent transactions other than, but similar to, that which the prosecution is based is admissible for the purpose of showing knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not guilty....

TEX.PENAL CODE ANN. § 31.03(c)(1) (Vernon Supp.1987). Ali's plea of not guilty placed the material question of intent at issue.

■■■ In weighing probative value against prejudicial effect, extraneous offenses may not be introduced if that element can readily be inferred from other uncontested evidence. *Clark*, 726 S.W.2d at 122. Where the State's need to prove intent is strong because of an otherwise innocent act, extraneous offenses are more likely to be probative than prejudicial. *Hargraves v. State*, 738 S.W.2d 743 (Tex. App.—Dallas 1987, no pet.); *see Boutwell v. State*, 719 S.W.2d 164, 174 (Tex.Crim. App.1985) (op. on reh'g). In the present case, intent cannot be inferred from the mere act of giving a check in payment for goods, or from other direct evidence. Upon reviewing the evidence of extraneous offenses, we conclude that the probative value outweighs its inflammatory or prejudicial effect. We overrule Ali's second point of error.

In point of error three, Ali complains that the court erred in admitting a videotape into evidence because the State failed to prove the proper predicate for its admission.

At the scene of the transfer of goods, the Dallas police department had an undercover van installed with a video camera. Investigator Reese wore a body microphone to record the conversation with the suspects. At trial, the court held a hearing on Ali's motion to suppress outside the presence of the jury to determine the admissibility of the videotape. Ali objected to the admission of the tape because the proper predicate had not been established.

Videotapes are a simultaneous audio and visual recording of events. *Roy v. State*, 608 S.W.2d 645, 649 (Tex.Crim.App.1980). In *Edwards v. State*, 551 S.W.2d 731 (Tex.Crim.App.1977), the Texas Court of Criminal Appeals has set forth a seven-pronged predicate for admission of sound recordings. The party offering the recording must show: (1) the recording device was capable of taking testimony, (2) the operator of the device was competent, (3) the establishment of the authenticity and correctness of the recording, (4) that changes, additions, or deletions have not been made, (5) the manner of the preservation of the recording, (6) identification of the speakers, and (7) that the testimony elicited was voluntarily made without any kind of inducement. *Roy*, 608 S.W.2d at 649, *quoting Edwards*, 551 S.W.2d at 733. The court announced in *Roy* that this same predicate applies to videotapes, but because videotapes are motion pictures as well as sound recordings, they convey a greater indicia of reliability than film or sound tapes alone. *Roy*, 608 S.W.2d at 649. Therefore, at least some of the *Edwards* elements may also be inferred from testimony. *Id.* The determination of whether the proponent has complied with the proper predicate is discretionary with the trial court, and an abuse of discretion must be shown before an appellate court can determine that the trial court erred in admitting the evidence. *McEntyre v. State*, 717 S.W.2d 140, 146 (Tex.App.—Houston [1st Dist.] 1986, no pet.); *see Edwards*, 551 S.W.2d at 733.

■ The operator of the video and audio surveillance equipment was thoroughly questioned about his experience with video and audio recording equipment. He testified that he had used the equipment hundreds of times in the five years he was in the intelligence division, special investigating unit of the Dallas police department. The operator testified that he was self-trained in the use of the video camera and recorder and had also been trained by other members of the intelligence division in their use. Members of the intelligence division and the body microphone company itself had trained him in the use of the audio cassette recorders. We hold that the

trial court's action in overruling Ali's objection to the competency of the operator was not an abuse of discretion.

■ The operator testified that the audio and video recorders were working properly on the date of the surveillance, however, he admits that there was an electrical short in the audio recorder which caused the sound to "cut out a little bit." The electrical short occurred when the surveillance van was moved from one location to another. This lack of audio was obviously an accidental, technical problem. The existence of minor gaps in a tape does not affect the reliability and trustworthiness of the evidence, nor render it per se inadmissible. *See Gahl v. State*, 721 S.W.2d 888, 897 (Tex.App.—Dallas 1986, no pet.), *quoting, Quinones v. State*, 592 S.W.2d 933, 943–44 (Tex.Crim.App.), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). We hold that the trial court did not abuse its discretion in accepting this explanation for the short time span in which the audio portion of the recording was not functioning on the videotape.

Ali next complains of a short period of time in which the video picture became blank. There was a timely objection made to the fact that "the video cut out and a portion of the video was deleted." However, Ali failed to secure a ruling on this objection. The judge merely stated, "All right.... Any voir dire on that?" After the officer had been questioned about the blank portion of the video Ali still did not obtain a ruling on his objection, therefore, no error is preserved. *See Stevens v. State*, 671 S.W.2d 517, 521 (Tex.Crim.App. 1984).

■ Ali further objected to the admission of the video tape because he alleges the State failed to prove chain of custody. To establish the proper predicate for admission, the State is only required to show "the manner of the preservation of the recording." The operator testified that the video cassette placed in evidence was the one he made on the day of the surveillance. He identified his name and badge number printed on the cassette and testified that he

watched the tape as it was being recorded and then "broke the tab off where you can't record or erase it." This preserved the video tape to ensure that no changes or deletions could be made. The accidental deletions in the audio and video portions of the tape does not affect the reliability and trustworthiness of the evidence. *McEntyre*, 717 S.W.2d at 147. Additionally, the Court of Criminal Appeals has held that, absent a showing that an exhibit has been tampered with, a chain of custody objection goes to the weight of the evidence rather than to its admissibility. *See Mendoza v. State*, 552 S.W.2d 444, 448–49 (Tex.Crim.App.1977); *Witt v. State*, 475 S.W.2d 259, 261 (Tex.Crim.App.1971). The court did not abuse its discretion in admitting the videotape for failure to show chain of custody.

■ Ali also complains that the State was "unable to identify all the individuals in the tape." During the filming of the incident, an unidentified man walked by the surveillance van. The man did not speak to anyone connected with the incident, nor is his voice recorded by the audio recorder. *Roy* and *Edwards* require that all *speakers* in a recording be identified. *Roy*, 608 S.W.2d at 649; *Edwards*, 551 S.W.2d at 733. The State is not required to identify this non-participating, uninvolved bystander who happened to pass in front of the camera. We hold that the trial court did not abuse its discretion by admitting the videotape into evidence. Ali's point of error three is overruled.

In his fourth point of error, Ali asserts that the court erred in overruling his motion for new trial because the evidence is insufficient to establish that he was guilty of theft by deception. Ali argues that the owner of the property was not deceived, therefore, he cannot be guilty of theft by deception. The term "deception" is defined in the Texas Penal Code. The pertinent definitions in the present case are set out below:

(A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of

another in the transaction, and that the actor does not believe to be true;

(B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true. . . .

TEX.PENAL CODE ANN. § 31.01(2)(A), (B) (Vernon 1974). The statute itself requires that the judgment of the other party to the transaction be affected by the accused's action. Ali argues that Kraft's judgment was not affected because the sale of the products in exchange for the check was part of a "sting" operation and there was testimony to show that the property owners had reason to believe the check was not good. We find this argument unpersuasive.

■ Reese testified he was aware of the possibility that the check to be presented by Ali and Mahammad would be bad; however, at the time the goods were delivered it was not definitely known that the check was bad. Reese and the Kraft driver testified that, if they had *known* that the check was bad, the goods would not have been unloaded. Mahammad also repeatedly assured them that the check was good. This constitutes some evidence of conduct and words that are "likely to affect the judgment of another in the transaction."

■ Ali also contends that the evidence does not demonstrate that he knew the check was bad. As discussed in point of error two, there was evidence that Ali had been involved in similar operations in San Antonio. This is evidence of intent and guilty knowledge. *See White*, 632 S.W.2d at 754.

■ Further, Ali asserts that Kraft's voluntary delivery of the property precludes deception in the inducement of the delivery. Ali cites *Peterson v. State*, 645 S.W.2d 807, 812 (Tex.Crim.App.1983) (op. on reh'g) and *Reed v. State*, 717 S.W.2d 643 (Tex.App.—Amarillo 1986, no pet.) to support this proposition. This argument, in light of our discussion, is without merit.

Sufficiency of the evidence is measured by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 312 n. 12, 99 S.Ct. 2781, 2789 n. 12 61 L.Ed.2d 560 (1979): "Whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dickey v. State,* 693 S.W.2d 386, 387 (Tex.Crim.App.1984). After reviewing the evidence in the light most favorable to the State, we hold that the evidence was such that any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. Ali's fourth point of error is overruled.

In point of error five, Ali asserts that the trial court erred in failing to instruct the jury on the lesser included offense of issuing a bad check.

Issuance of a bad check may be a lesser included offense of theft where the State fails to prove that the defendant obtained property or fails to prove its value. *Christiansen v. State,* 575 S.W.2d 42, 45 (Tex.Crim.App.1979). In determining whether a charge on a lesser included offense is required, a two-step test is employed: (1) the lesser included offense must be included within the proof necessary to establish the alleged offense, and (2) there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Denison v. State,* 651 S.W.2d 754, 759 (Tex.Crim.App.1983), *quoting, Royster v. State,* 622 S.W.2d 442, 446 (Tex.Crim.App.1981) (op. on reh'g). Ali is not only guilty of issuing a bad check, but he also took possession of the property. After the goods were loaded into Yakahama Sales' truck, Ali appeared on the scene with a key to lock the truck's loading door. When the investigator questioned him, Ali stated that he would assume responsibility for the goods. Ali then unlocked the truck's cabin door and sat in the driver's seat. We hold that the trial court properly refused to instruct the jury on the lesser

included offense of issuing a bad check. Ali's fifth point of error is overruled.

In his sixth point of error, Ali asserts that his equal protection rights were denied in the selection of a fair and impartial jury of his peers by the State's exercising its peremptory jury strikes against blacks solely on the basis of race.

The trial court observed that after all jurors had been excused for cause, one black venireman remained in the first thirty-two qualified jurors. The State exercised one of its peremptory challenges to strike her from the panel. Defense counsel properly requested a *Batson v. Kentucky*[1] hearing prior to the swearing of the jury. The prosecutor was questioned by defense counsel regarding the basis of his peremptory strikes. The prosecutor stated that he struck the black venireman because: (1) he did not think she was truthful in her answers because when questioned she avoided eye contact and very quietly responded that she would find him guilty if all elements of the offense were proven beyond a reasonable doubt; (2) he did not believe she was literate enough to comprehend the technical nature of the trial; and (3) she was divorced.

In *Batson* the Supreme Court reiterated its observation that the State's purposeful or deliberate denial of jury participation to black persons because of race violates a defendant's rights under the equal protection clause of the Constitution. *Keeton v. State,* 724 S.W.2d 58, 64–65 (Tex. Crim.App.1987) (op. on reh'g). In order to invoke *Batson*'s protections, the defendant must establish "purposeful discrimination" by showing: (1) he is a member of a cognizable racial group; (2) the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race; and (3) the facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the veniremen because of their race. *Id.* 724 S.W.2d at 65. If the defendant raises an inference of purposeful discrimination and the trial court determines that a prima facie case of discrimina-

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

tion exists, then the prosecutor must come forward with a neutral explanation for the peremptory challenge. *Tompkins v. State* No. 68,870, slip op. at 5 (Tex.Crim.App. October 7, 1987) (not yet reported).

At the *Batson* voir dire hearing the judge did not make any ruling on whether a prima facie case of discrimination had been shown, but listened to the State's testimony concerning its use of the peremptory challenge, listened to argument from both sides, and denied defendant's motion for mistrial. Trial judges, experienced in supervising voir dire, can decide if the circumstances of the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors. *Townsend v. State*, 730 S.W.2d 24, 26 (Tex. App.—Texarkana 1987, pet. denied). However, the trial court made no findings of fact or conclusions of law concerning the properly raised *Batson* issue, and none were requested. The trial court could have overruled the defendant's motion for mistrial because it did not find that defendant made a prima facie showing of discrimination under *Batson;* or, the court could have overruled the motion because it found that the State's neutral explanations rebutted defendant's prima facie showing of purposeful discrimination. *Id.* 730 S.W.2d at 27. Thus, we hold that the trial court's action was not erroneous. Ali's sixth point of error is overruled.

In his seventh point of error, Ali claims that the trial court erred in denying his motion to set aside the indictment. Specifically, Ali complains that the theft of each enumerated food item constitutes a separate offense and the indictment should have alleged that "the amounts are obtained pursuant to one scheme or continuing course of conduct."

 The indictment states in pertinent part that on or about March 11, 1986, Ali did "unlawfully, knowingly and intentionally, appropriate property, namely: exercise control over property, other than real property, to wit: food items as follows:" Nine bulk food items are then listed. The indictment further states that the appropriation was without the owner's effective consent because it was induced by deception in that the property was "secured in exchange for check number 93 dated March 11, 1986" in the amount of $16,161.96. The indictment charged only one offense and only one theft from one complainant. The language which Ali insists should have been included is only required when the State wishes to aggregate the amounts obtained from more than one theft to allow the accused to be prosecuted as for one offense for the aggregated amount. *Richards v. State*, 644 S.W.2d 182 (Tex.App.—Dallas 1982, no pet.); *see Turner v. State*, 636 S.W.2d 189, 195–96 (Tex.Crim.App.1980) (op. on reh'g); TEX.PENAL CODE ANN. § 31.09 (Vernon 1974). The trial court properly denied Ali's motion to set aside the indictment. Ali's point of error seven is overruled.

In his eighth point of error, Ali claims the trial court erred in overruling his motion for mistrial based upon the State's bolstering of an unimpeached witness.

Michael Swan, a Kraft Food employee, testified about Ali's similar operation in San Antonio and about his telephone conversations with Ali. In response to four separate questions, Swan specifically stated that Ali had placed the orders for the food items in San Antonio. The testimony concerning Ali's involvement in placing orders over the telephone was unimpeached. After defense counsel had conducted voir dire to determine the admissibility of the checks involved in the extraneous offenses, the State again asked Swan if he was positive that Ali had placed the food orders. After Swan responded that he had no doubts that Ali had placed the orders, defense counsel interrupted with the objection that the question constitutes bolstering. The objection was sustained, the jury was instructed to disregard the question, and the motion for mistrial was denied.

 Bolstering occurs when one item of evidence or testimony is improperly used by a party to add credence or weight to some earlier, unimpeached piece of evidence. *See Anderson v. State*, 717 S.W.2d 622, 630 (Tex.Crim.App.1986); *Sledge v. State*, 686 S.W.2d 127, 129 (Tex.Crim.App.

1984). Bolstering occurs when a second witness is called to corroborate the unimpeached evidence. *Joseph v. State*, 679 S.W.2d 728, 731 (Tex.App.—Houston [1st Dist.] 1984, no pet.). The prosecutor's questions were addressed to Swan alone, and although they were repetitive they do not constitute bolstering. Ali's eighth point of error is overruled.

In his ninth point of error, Ali claims that the court's denial of his motion for mistrial due to the admission of hearsay testimony constitutes error. Kraft driver, Robert Asher, was testifying about his delivery of goods to Ali in San Antonio when he mentioned that while they were unloading the goods Muhammad told him that Ali had gone "to pick up a check." Defense counsel objected to the statement on the grounds of hearsay. The objection was sustained, the jury was instructed to disregard, and Ali's motion for mistrial was denied. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX.R.CRIM.EVID. 801(d) (Vernon Supp. 1987). Generally, any error in admitting improper hearsay testimony in a criminal case may be cured and rendered harmless by the trial court's instruction to disregard, *Womble v. State*, 618 S.W.2d 59, 61 (Tex. Crim.App.1981), unless the hearsay testimony is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression on their minds. *Franklin v. State*, 693 S.W.2d 420, 428 (Tex.Crim.App.1985); *see Cozby v. State*, 506 S.W.2d 589, 590 (Tex.Crim.App.1974).

Asher's statement constitutes hearsay testimony. However, Asher later testified that after he unloaded the goods, he returned to the company's office and watched while Ali signed the check given in payment for the goods. Clearly, when this later testimony is considered, the statement that Ali allegedly went "to pick up a check" is not so harmful that the instruction to disregard could not cure the prejudicial effect. *See, e.g., Tamminen v. State*, 644 S.W.2d 209, 212 (Tex.App.—San Antonio 1982), *aff'd in part, rev'd in part*, 653 S.W.2d 799 (Tex.Crim.App.1983). Ali's ninth point of error is overruled.

In his tenth point of error, Ali asserts that the trial court erred in denying his motion for mistrial due to improper jury argument.

During closing argument at the guilt-innocence stage of the trial, the prosecutor stated that Malon Mitchell, the district manager of Kraft sales in Dallas, was told by Kraft's San Antonio office, "We have trouble down here with people, to go to our distributorships, order beef, pork and cheese." Ali objected that this summation constitutes argument which is outside the evidence in the case. The court sustained the objection, instructed the jury to disregard, and denied Ali's motion for mistrial. There are four categories of permissible prosecutorial jury argument: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) response to defendant's argument, or (4) a plea for law enforcement. *Gomez v. State*, 704 S.W.2d 770, 771 (Tex.Crim.App.1985). It is improper for a prosecutor to include evidence in his jury argument that is outside the record. *Carter v. State*, 614 S.W.2d 821, 823 (Tex.Crim.App.1981). In examining challenges to jury argument, the appellate court must consider the remark in the context in which it appears. *Denison v. State*, 651 S.W.2d 754, 761 (Tex.Crim.App.1983). Counsel is given wide latitude, without limitation in drawing inferences from the evidence as long as they are reasonable, fair, legitimate, and offered in good faith. *Id.* at 761–62.

Upon review of Mitchell's trial testimony, we conclude that the prosecutor was merely drawing inferences from the evidence. Mitchell testified that he was contacted by the Kraft Food's San Antonio office and that the information from that office related to the food order to be delivered to Yukahama Sales, Ali and Mahammad's company. Further, Mitchell testified that he had conversations with an investigator in the Bexar county district attorney's office and a prosecutor in the Dallas County district attorney's office. As a result of these conversations, arrangements

to meet with Ali and Mahammad were made which led to their arrest. We hold that the argument was a reasonable deduction from the evidence and was not improper. Additionally, even if the argument was improper, any injury from the statement is obviated when the court instructed the jury to disregard. *See Brown v. State*, 692 S.W.2d 497, 502 (Tex.Crim.App.1985). Ali's tenth point of error is overruled.

In his final point of error, Ali alleges that the trial court erred in denying his motion for mistrial due to additional improper jury argument.

In jury argument at the guilt-innocence stage of trial, the prosecutor summarized the evidence presented concerning the extraneous offenses committed by Ali with Muhammad in San Antonio. The prosecutor then stated that "it's a reasonable deduction from the evidence this got too hot." Ali objected by stating, "That's an objectionable comment, no testimony whatsoever they say got hot [sic] in San Antonio." The objection was sustained, the jury was instructed to disregard, only to remember the testimony presented, and the motion for mistrial was denied.

As discussed in point of error ten, the prosecutor may make reasonable inferences from the evidence. *See Denison*, 651 S.W.2d 761–62. An improper remark is incurable only when it is so inflammatory that its prejudicial effect cannot be reasonably removed by the trial court's admonishment. *Brown*, 692 S.W.2d at 502. Whether such argument is harmful enough to warrant reversal is ultimately determined on the basis of the argument's probable effect on the minds of the jurors. *Logan v. State*, 698 S.W.2d 680, 682 (Tex. Crim.App.1985). We hold that the argument, if improper, was not so prejudicial that it was not cured by the trial court's instruction to disregard. Ali's eleventh point of error is overruled.

The judgment of the trial court is affirmed.