Opinion filed October 16, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed October 16,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00075-CR

                                                       ________

 

                                    THOMAS
H. TECZAR, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 91st District Court

                                                        Eastland
County, Texas

              Trial Court
Cause Nos. CR-20006, CR-20007, CR-20008, & CR-20009

 



 

                                             M
E M O R A N D U M   O P I N I O N

After
a bench trial, Thomas H. Teczar was convicted of three aggravated sexual
assault of a child offenses and one indecency with a child offense.  In each of
the aggravated sexual assault cases, his punishment was assessed at confinement
for twenty-five years.  In the indecency with a child offense, his punishment
was assessed at confinement for fifteen years.  These cases have been
consolidated for our consideration on appeal.








In
contending that those convictions must be reversed, appellant presents five
issues for our disposition.  He argues:  (1) that he was denied his Fourteenth
Amendment due process rights because one of the prosecuting attorneys had represented
the complaining witness in a suit for damages against appellant and the
Catholic Diocese of Fort Worth; (2) that the trial court erred in admitting the
testimony of David Lewcon as an expert in the psychology and behavior of those
who commit child sexual abuse and their victims; (3) that the trial court erred
in admitting testimony that appellant had committed uncharged acts of sexual
abuse against David Lewcon when Lewcon was a child; (4) that the trial court
erred in admitting testimony by David Lewcon that appellant had committed
numerous acts of child sexual abuse against others over a period of several
decades; and (5) that the trial court erred in admitting into evidence records
of the Catholic Diocese of Fort Worth containing memoranda, correspondence,
press documents, and other materials related to allegations that appellant had
committed numerous uncharged acts of child sexual abuse.  We reverse the
judgment of the trial court and remand for a new trial.

The
nature of the questions raised in this appeal requires a fairly detailed resume
of pertinent portions of the trial testimony.  From the late 1980s until early
1993, appellant was a priest at Saint Rita=s
Catholic Church in Ranger, Texas, which was part of the Catholic Diocese of
Fort Worth.  He lived in the rectory adjacent to the church building.  The
complaining witness in this matter was Billy Ray Swiney.  

In
1990, when Swiney was eleven years old, he moved with his mother and sister
into a house  across the street from the church.  One day soon after his
arrival, Swiney saw appellant waving at him from across the street, and he went
across the street to say hello.  He then invited appellant to come over to his
house and meet his mother and sister.  He averred that, during the following
months, he and appellant became closer.  He liked appellant because A[h]e let me drink alcohol,
smoke cigarettes, stuff like that.@ 
Appellant also gave him advice and explained to him Ahow to be a man and how to just do things that
normally I wouldn=t do.@  Appellant also let Swiney
drive his Mercedes automobile.  








It
was during that same period of time that Swiney met Daniel Hawley, a young man
who worked at the convenience store managed by Swiney=s mother.  Hawley took him fishing, boating,
shooting guns in the country, and Ado[ing]
all kinds of stuff.@ 
At that time, Hawley was in his A[m]id-twenties,
somewhere in there.@ 
Swiney=s mother
allowed him to spend nights at Hawley=s
house where they would watch pornographic movies, drink alcohol, and smoke cigarettes
and marihuana.  Eventually, during Swiney=s
third sleepover at Hawley=s
house, while they were watching pornographic movies and with the comment that Athat=s what men do,@
Hawley began masturbating and touched and stroked Swiney=s penis.  Later, sometime in July of 1990,
Hawley inserted his penis into Swiney=s
anus.

Swiney
continued to visit and spend nights with Hawley.  About a week or two later,
they picked appellant up and took him to Hawley=s
house.  At that time, Swiney averred, Hawley fellated appellant and asked
Swiney to masturbate in their presence, which he did.  Later the same month,
appellant took Swiney and Hawley flying in a small, single-engine plane.  While
they were doing so, Swiney again witnessed Hawley perform fellatio on appellant. 
They then returned to Hawley=s
house where Hawley anally penetrated appellant, and appellant helped Swiney to
masturbate.

Two
weeks later, Swiney returned to Hawley=s
house where he, Hawley, and appellant smoked marihuana and drank alcohol
provided by appellant and, after which, appellant attempted to anally penetrate
Swiney until he was told to stop because it was too painful.  Swiney never
permitted appellant to attempt anal intercourse again, but he continued to go
over to Hawley=s house
and did allow appellant on several occasions to perform fellatio on him. 
Swiney said he attempted to perform fellatio on appellant but gagged and could
not continue although he did anally penetrate appellant one time.  Swiney also
said that appellant warned him not to mention their activities because Apeople didn=t understand, that he could
have me taken away from my mother, put in a bad place, have my mother
embarrassed and fired from her job, and that he has put away children before.@

Swiney
identified a number of other boys and young men who had visited Hawley=s house during that time
and who had joined him, Hawley, and appellant boating on Lake Leon.  He also
described photographs taken by appellant of himself and other boys when they
were naked and sexually aroused.

Later,
Hawley became the subject of a criminal investigation that resulted in his
conviction for sexually molesting young teenage boys, including Swiney.  Swiney
cooperated in the investigation and gave a statement describing Hawley=s criminal activities, but
he did not mention appellant.  When queried as to why he did not refer to
appellant, his reply was:  

They never asked me,
and all I could hear was my mother crying, and I wanted to leave as soon as
possible.  And I was worried about what Teczar told me, about putting me away
or taking me away from my mother, so I just wanted to leave as soon as
possible. 

 

Swiney said
that, after he left the police station, his mother had a nervous breakdown.








Subsequent
to the time of the investigation, he never saw appellant again and never
discussed with anyone what appellant had done to him until some ten years later
when he  received a telephone call from David Lewcon who asked him if he knew
appellant and if appellant had sexually abused him.  Lewcon told him that
appellant had abused him when he was younger.  Swiney averred that this
surprised him as he had thought that he had been the only one abused by
appellant.  Because of this, Swiney decided to sue appellant and was referred
to an attorney by Lewcon.  As it becomes necessary, additional portions of
Lewcon=s testimony
will be referred to in our discussion of appellant=s second, third, and fourth issues on appeal.

          
Reiterated, appellant=s
first issue is that he was denied due process of law because of the appointment
of a special prosecutor who had a personal financial interest in the outcome of
this case because she was representing the complaining witness in a civil
lawsuit against appellant and the Catholic Diocese of Fort Worth.

 A
special prosecutor is an attorney who, with the consent of the district
attorney, assists that district attorney in the investigation and prosecution
of a particular case.  However, the district attorney remains responsible for
the prosecution, control, and management of the case.  The special prosecutor
need not be appointed by the trial court and is not required to take the
constitutional oath of office in instances, such as this one, in which she acts
with the permission of the district attorney. Stephens v. State, 978
S.W.2d 728, 731 (Tex. App.CAustin
1998, pet. ref=d). 
Here, the record shows that the civil suit in question was settled in early
April 2005, nearly two years before the commencement of this trial on March 6,
2007, and there is nothing else in the record that shows she had any financial
interest in the outcome of this criminal prosecution.  Additionally, other than
her presence at the counsel table, the record does not show that she
participated in the direct or cross- examination of any witness or the
introduction or exclusion of any other evidence or that she participated in any
conferences with the trial court.  Under these circumstances, we do not find
that her participation violated any principle of due process and, thus,
presents no reversible error.  Accordingly, appellant=s first issue on appeal must be and is,
hereby, overruled.








Because
of their close relationship, we will consider appellant=s next three issues together.  In his second
issue, appellant challenges the admission of the testimony of Lewcon as an
expert on the psychology and behavior of those who commit child sexual abuse
and their victims.  A trial court=s
decision relating to the admission or exclusion of evidence is evaluated on
appeal for an abuse of discretion.  Williams v. State, 535 S.W.2d 637,
639-40 (Tex. Crim. App. 1976).  That means that the trial court=s ruling will be upheld if
it is within Athe zone
of reasonable disagreement.@ 
Salazar v. State, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001).

In
the seminal case of Vela v. State, 209 S.W.3d 128 (Tex. Crim. App.
2006), a unanimous court had occasion to give a detailed explanation of the
conditions regarding the admissibility of expert testimony in a criminal case. 
Because of that somewhat unusual unanimity, we will refer to that case and its
guidance in some detail.  In the course of its explication, the court noted
that, in determining admissibility, a trial court must make three separate
inquiries before admitting such testimony.  Those inquiries are (1) whether the
witness qualifies as an expert by reason of his knowledge, skill, experience,
training, or education; (2) whether the subject matter of the testimony is an
appropriate one for expert testimony; and (3) whether admitting the expert
testimony will actually assist the factfinder in deciding the case.  Vela,
209 S.W.3d at 131.  The court referred to those inquiries as (1) qualification,
(2) reliability, and (3) relevance.  Id.

In
determining whether a trial court abused its discretion in evaluating a witness=s qualifications as an
expert, the high court instructed three determinations to be made, namely: (1)
whether the field of expertise is complex, (2) how conclusive is the expert=s opinion, and (3) how
central is the area of expertise to the resolution of the case.  Id.  In
its ongoing discussion, the Vela court referenced the requirement of Tex. R. Evid. 705(c) in regard to the
reliability of expert testimony and its requirement that, if Athe underlying facts or
data do not provide a sufficient basis for the expert=s opinion under Rule 702 or 703,[1]
the opinion is inadmissible.@ 
Id. at 133.








The
Vela court then referenced its explanation in the Kelly case[2]
in regard to scientific evidence that, before such evidence is admissible, it
must meet three criteria to be sufficiently reliable, namely: (1) the
underlying scientific theory must be valid, (2) the technique applying the
theory must be valid, and (3) the technique must have been properly applied on
the occasion in question.  Id. at 133.  However, the court went on to
recognize and explain that, in some cases, the reliability of scientific
knowledge might not be in issue and that, in those cases, Athe relevant reliability
concerns may focus upon personal knowledge or experience.@  Id. at 134.  In
such cases, the proponent must establish some foundation for the reliability of
an expert=s opinion.  Id. 
In explicating this caution, the court noted that A[e]xperience alone may provide a sufficient
basis for an expert=s
testimony in some cases, but it cannot do so in every case.@  Id.

In
a case such as this one that involves the reliability of Asoft@ science evidence, the requisite reliability
may be established by showing (1) the field of expertise is a legitimate one,
(2) the subject matter of the expert=s
testimony is within the scope of that field, and (3) the expert=s testimony relies upon or
utilizes the principles involved in that field.  Weatherred v. State, 15
S.W.3d 540, 542 (Tex. Crim. App. 2000).  

To
the extent that Lewcon=s
testimony attempted to profile the psychology and behavior of child sexual
abusers and their victims, it was presented as the testimony of an expert, and
its admissibility is governed by the rules pertaining to the admission of such Asoft@ science evidence.  Parenthetically, the Vela
court cautioned that, to qualify a witness as an expert by practical experience
alone, the trial court must Afully
explore that witness=s
experience in the particular field in which the witness intends to give an
expert opinion.@  Vela,
209 S.W.3d at 135.

In
support of his expertise, Lewcon averred that he was a member and cofounder of
the New England Chapter of the Survivors Network of those Abused by Priests
(SNAP).  He also was a founder and member of a small nonprofit organization
called Advocates for Change.  It is an organization that raises funds for
efforts to assist clergy abuse victims or efforts in organizing seminars.  At
one time, he was listed on the SNAP website as a victim advocate and was
available to consult with other victims of sexual abuse by priests.  In that
role, he consulted with more than 500 such victims.  

Lewcon
also testified that he was a coactive coach, which he defined as someone who
has acquired some skills through seminars to be able to be more effective in
identifying with clergy abuse victims.  Moreover, he had operated a suicide
hotline and had consulted with Abetween
50 to 100@ on that
line.  Lewcon had additionally been a victim of clergy abuse.  He had also
taken seminar courses through a company by the name of Coaching Training
Institute that offered courses in Ahow
to be more effective on the subject of coaching.@ 
He spent five weekends in taking those seminars, which cost him a total of
$4,000.  He studied Amostly
liberal arts courses@
in college and had studied only the Afirst
level@ of psychology,
which, he said, was lower than Psychology 301.  He had never received or
applied for any kind of license as an expert on clerical abuse of children.








In
considering the reliability and sufficiency of Lewcon=s qualifications, we also must bear in mind
the Vela court=s
reminder that, as a component of the qualification prerequisite, Athe expert=s background must be
tailored to the specific area of expertise in which the expert desires to
testify.@  Id.
at 133.  Lewcon testified in some detail about the psychology of child sexual
abuse, including the methods and practices of those who commit such abuse, the
consequential psychological consequences for the victims, and the reasons why
victims such as Swiney might be reluctant to make outcry about such abuse
especially from an authority figure such as a priest.  That reluctance was
especially strong, he said, to testify against a priest because A[t]here is a tremendous
amount of respect for this position, whether one is Catholic or not.@ 

We
can only conclude that Lewcon=s
testimony on the general behavior of sexual predators or their victims amounted
to a generalization from his own personal experience and the personal
experiences of an undisclosed number of other persons who claimed to be victims
of sexual abuse.  He had a lack of actual institutional instruction in that
field, other than the five weekend seminars.  Under this record, we can also
conclude that Lewcon lacked the qualifications to testify as an expert and that
his testimony was not supported by evidence of any scientific theory, soft or
otherwise.  Accordingly, the admission of his testimony as that of an expert
was error.  Appellant=s
second issue is sustained.

In
his third issue, appellant postulates that the admission of Lewcon=s testimony that appellant
had committed uncharged acts of sexual abuse against him when he was a child,
which were similar to the acts of sexual abuse about which Swiney testified
appellant committed on him, was error.  That challenge again requires us to
discuss Lewcon=s
testimony in some detail.








Lewcon
averred that, as he was growing up, he had few friends.  He met appellant at
Saint Mary=s Catholic
Church in Massachusetts.  He said appellant was aware that he had an interest
in the Catholic priesthood.  Appellant took him on trips, including one to
appellant=s family
estate in Cape Cod.  They developed a growing friendship because appellant
would give Lewcon alcohol and because they would sit around, talk, and listen
to music.  Appellant would use biblical verses to show Lewcon that he should be
a more loving person.  After this had continued for a period, appellant talked
the witness into giving him a back rub.  Later, while the two were in the
church rectory,  appellant Ainsisted
to give [Lewcon] a back rub.@ 
As he did so, appellant eventually disrobed Lewcon and started Amasturbating@ him.  Lewcon averred
similar occurrences happened about four times in the Massachusetts church
rectory.

Later,
Lewcon went to the Cape Cod residence where appellant supplied him and some
other young men with alcohol and marihuana.  As the group moved out to the
front porch, some remark was made about a gun.  The remark frightened Lewcon,
and he went back inside.  Appellant followed him into the residence and invited
him to appellant=s
Worcester, Massachusetts, house.  Upon their arrival there, Lewcon said that he
went to bed.  He was awakened in the morning with appellant performing oral sex
on him and masturbating him.  Lewcon, who was fifty-two at the time of his
testimony, was sixteen at the time and said he tried to stop appellant.  During
the period of their acquaintance, Lewcon had a telephone conversation with
appellant during which appellant told him that he was masturbating as he was
talking to Lewcon.  The witness also said that appellant would tell him of
sometimes not wearing anything under his robe because it Afelt good to wear nothing.@  

Lewcon
averred that he did not realize that he had suffered sexual abuse until
mid-1993 when he saw a television news report about clergy abuse.  He then
later realized he had been a victim of clergy abuse, and it had Aa real shocking effect.@

Evidence
is relevant if it has Aany
tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be
without the evidence.@ 
Tex. R. Evid. 401; Corley v.
State, 987 S.W.2d 615, 618 (Tex. App.C
Austin 1999, no pet.).  In criminal cases such as this one, evidence of
extraneous offenses is not admissible to prove the character of a person in
order to show action or conformity therewith.  Tex. R. Evid. 404(b).  However, it may be admissible for
other purposes, such as proof of some element of the charged offense, most
commonly identity, intent, motive, opportunity or knowledge.  Id.; Montgomery
v. State, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1991).








It
is the State=s
argument that Lewcon=s
testimony was necessary to prove appellant=s
identity in the case.  This is so, it contends, because of the conflict between
testimony by the victim that appellant had taken him on a ride in a small
Taylorcraft airplane during which some sexual acts were committed and that of
appellant=s brother in
which he denied that appellant had ever taken flying lessons or flown as a
pilot.   The State also references statements during appellant=s closing argument claiming
that the victim must have been mistaken in his identity of appellant in this
regard because there was evidence that a priest other than appellant owned a Taylorcraft
and that perhaps the victim had Aconfused
his version of events@
that took place in the plane.  The State also points to Lewcon=s testimony as referring to
similarities in the techniques used by appellant in seducing him and the victim
here.  Those similarities included that appellant went out of his way to make
Lewcon Afeel real
special,@ that
appellant wanted to help Lewcon feel more loving, that appellant needed to
express his love physically, that appellant introduced him to the use of marihuana
and would give him alcohol, and that appellant used Bible verses to talk to the
witness about love.  All of these are techniques that Swiney had testified were
used by appellant on him.  Thus, the State argues that such detailed testimony
was not elicited to show conformity but was, rather, introduced to prove that
it was appellant who committed the charged abuse of this victim.

Rule
404(b) provides that evidence about other crimes, wrongs, or acts is not
admissible unless it makes more or less probable some element of the charged
offense, most commonly identity or intent, or some evidentiary fact.  See
also Montgomery, 810 S.W.2d at 387-88.  Thus, the admissibility of Lewcon=s rather detailed testimony
must be assessed in light of the trial as a whole.

In
particular, appellant=s
identity was not really a disputed issue in the case.  The defense did not
claim, nor does the evidence suggest, that Swiney was not acquainted with
appellant prior to the time of the alleged offenses or that they were committed
under circumstances that made it difficult or impossible for him to identify
the person abusing him.  Of course, had that been the case, arguably, proof of
appellant=s extraneous
seductions would have been admissible to establish identity.  Lane v. State,
933 S.W.2d 504, 519 (Tex. Crim. App. 1996); Ransom v. State, 503 S.W.2d
810, 812 (Tex. Crim. App. 1974).  That, however, was not the case here.

Additionally,
the defense did not claim, nor does the evidence suggest, that appellant might
have committed the acts with which he was charged, accidentally or without the
intent to arouse or gratify someone=s
sexual desire.  See Clark v. State, 726 S.W.2d 120, 124 (Tex. Crim. App.
1987).  That being so, there is nothing in the evidence from which it could be
inferred that, if the alleged crimes were committed, they were committed
without the culpable mental state required by law.  Thus, the mental
culpability required for conviction was inferrable with high confidence from
the conduct itself.  See Morgan v. State, 692 S.W.2d 877, 881 (Tex.
Crim. App. 1985).








Because
Swiney=s testimony was
the only evidence that established the elements of the alleged crime, Lewcon=s testimony describing the
extraneous misconduct by appellant could only have been admissible against appellant
if it was necessary to overcome the implication that Swiney was lying or
mistaken in his testimony.  Thus, Swiney=s
credibility literally determined the outcome of the trial.  In such instances,
because the credibility of a witness to a large degree is determinable by the
factfinder from an observation of his demeanor while testifying, the parties
are entitled to offer evidence that impeaches the credibility of a witness, and
the trier of fact may take such evidence into account in making a determination
as to the veracity of the witness=s
testimony.  State v. Ross, 32 S.W.3d 853, 857 (Tex. Crim. App.
2000); Koehler v. State, 679 S.W.2d 6, 9-10 (Tex. Crim. App. 1984). 
Even so, in the absence of such impeaching evidence, the witness=s credibility may not
ordinarily be bolstered with otherwise irrelevant testimony that only serves to
support or reinforce the veracity of the witness.  Rousseau v. State,
855 S.W.2d 666, 681 (Tex. Crim. App. 1993).

Here,
Swiney=s testimony was
not impeached.  The only evidence that would perhaps undermine the credibility
of his testimony was the evidence that appellant cannot fly an airplane and
that Swiney may not correctly have described the appearance at the time of the
abuse of appellant=s
penis when compared with its present appearance.  The description of appellant=s penis had little
probative value because of the undisputed length of time since Swiney had had
an opportunity to observe it.  Whether or not appellant could fly an airplane
is not a credibility dispute that can be resolved by evidence that appellant
sexually abused other children unless that abuse occurred while appellant was
flying a plane, which is not Lewcon=s
testimony.  In addition, the abuses committed upon Lewcon occurred some twenty
years prior to the time the offenses were allegedly committed upon Swiney. 
Under this record, those offenses were too remote to have probative value
here.  See Corley, 987 S.W.2d at 620-21.

Lewcon=s testimony about the
extraneous offenses committed by appellant was not necessary to prove his
identity or intent nor did it logically rehabilitate an impeached witness.  We
can only conclude, therefore, that such testimony would only show that it was
consistent with appellant=s
character to abuse children, that he was thus a criminal, and that he must be
guilty of the offenses charged against him.  That is an impermissible purpose. 
Tex. R. Evid. 404(a); Robles
v. State, 85 S.W.3d 211, 213 (Tex. Crim. App. 2002).  Appellant=s third issue is sustained.








In
his fourth issue, appellant argues that the admission of Lewcon=s testimony about uncharged
acts of sexual abuse against others over the course of several decades was
error.  Tex. R. Evid. 602
provides that A[a]
witness may not testify to a matter unless evidence is introduced sufficient to
support a finding that the witness has personal knowledge of the matter.@  That evidence may come
from a variety of possible sources in addition to that of the witness himself. 
But, unless the witness is testifying as an expert or giving a lay opinion
based on his own perceptions, he may not report anything but his own personal
observations and experiences.  Bigby v. State, 892 S.W.2d 864, 889 (Tex.
Crim. App. 1994).

Lewcon
testified that appellant had also sexually abused as many as nine other
children in both Massachusetts and Texas although there was no showing that he
had personal knowledge of these occasions.  For the reasons we have previously
expressed, Lewcon was not entitled to the expert witness exemption from the
personal knowledge requirement provided in Rule 602 nor was there any other
showing that those references were admissible.  Therefore, they only served to
show that appellant was a child molester generally.  As we noted in our
discussion of the preceding issue, that is an impermissible purpose.  Rule
404(a).  Appellant=s
fourth issue is sustained.  

Our
sustention of appellant=s
second, third, and fourth issues necessitates that we determine if those errors
require a reversal and remand for retrial.  In making that determination, we
may no longer presume that, in the case of a bench trial, the trial court will
disregard any inadmissible evidence.  See Gipson v. State, 844 S.W.2d
738, 740-41 (Tex. Crim. App. 1992).  Furthermore, we must bear in mind that a
nonconstitutional error that does not affect substantial rights must be
disregarded and that a criminal conviction should not be overturned for
nonconstitutional error if the appellate court, after examining the record as a
whole, has fair assurance that the error did not influence the factfinder or
had but a slight effect.  See Tex.
R. Evid. 103(a); Tex. R. App. P.
44.2(b); Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000); Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).








Swiney
was the only witness who testified and had, as the victim, personal knowledge
of appellant=s sexual
abuse of him while he was a minor.  Much of the other evidence dealt with the
circumstances surrounding appellant=s
activities with Hawley and others that would not have been relevant except as a
basis for Lewcon=s
expert inferences that that behavior was consistent with the behavior of sexual
predators in general.  As we discussed above, Lewcon was not qualified as an
expert to advance those conclusions.  Moreover, Lewcon=s testimony about appellant=s activities with him was
not only remote in time, but would only show that appellant was a bad person
generally who used his position as a priest to seduce underage adolescents in
cases other than the one for which he was on trial and would not aid the
factfinder in resolving any issue actually contested in this trial. 

Lewcon=s testimony about the
extraneous acts of sexual assault on him and other children was sufficiently
extensive, detailed, and vivid as to make an indelible impression on the mind
of any trier of fact.  Suffice it to say, under this record, we cannot say with
any fair degree of assurance that the error did not influence the factfinder or
that it had only a slight effect or that the error did not affect appellant=s substantial rights.  We
must, therefore, reverse the judgment of the trial court.  See Johnson,
967 S.W.2d at 417.  The decision that we have made obviates the necessity for
discussion of appellant=s
fifth issue as it concerns an evidence question that may not reoccur in a new
trial.  Tex. R. App. P. 47.1.

In
sum, for the reasons we have expressed above, the judgment of the trial court
is reversed, and the cause is remanded to the trial court for a new trial.

 

 

JOHN T. BOYD

SENIOR JUSTICE

 

October 16, 2008                                                                    

Do not publish.  See Tex. R. App. P. 47.2(b).             

Panel consists of:  McCall, J.,

Strange, J., and Boyd, S.J.[3]









[1]Tex. R. Evid. 702, 703.





[2]Kelly v. State,
824 S.W.2d 568 (Tex. Crim. App. 1992).





[3]John T. Boyd, Retired Chief Justice, Court of Appeals,
7th District of Texas at Amarillo sitting by assignment.