COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| THOMAS VARKONYI, | | No. 08-06-00255-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | County Court at Law No. 7 |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20040C16770) |
| | § | |

**O P I N I O N**

Thomas Varkonyi appeals his conviction of obscenity. Appellant, acting *pro se*, waived his right to a jury trial and tried the case to the court. The trial court found him guilty of promotion of or possession with intent to promote obscene material. The court assessed punishment at confinement in the El Paso County Jail for a term of twenty days. Finding no error, we affirm.

**FACTUAL SUMMARY**

Appellant and the State waived their respective rights to a jury trial, and the trial court heard Appellant's motion to suppress evidence at the same time it heard the case on the merits. The following facts were developed during this combination hearing.

In July 2004, David Bazan and John Robert Armendariz, El Paso police officers, participated in an undercover operation involving Appellant. The investigation began when the police department received information that a female student at El Paso Community College had applied for a job offered by Appellant but when she went to his home, he solicited her to provide sex for money and to be featured on a pornographic website. Bazan participated in the undercover operation using the name "Daniel Hernandez" and Armendariz used the name "Maurizio Payan." They

contacted Appellant and pretended to be customers who wanted assistance in developing a website involving cameras and pictures. They went to Appellant's home, spoke with him about launching the website, and explained that they wanted him to work as a consultant in setting up the computers and cameras. They also asked Appellant to show them how to operate the computer and the cameras. Appellant quoted them a fee for these services. Initially, they did not tell Appellant they wanted to set up a pornographic website but Appellant asked several times what the website would involve. Finally, Armendariz asked Appellant if he objected to pornography. Appellant said no, and he showed them various images on his computer, including a video depicting a woman being sexually penetrated by a pony. During this meeting, Appellant gave the officers his business card listing an e-mail address.

One week after this conversation, Armendariz, using an address he set up as part of his undercover identity, sent the following e-mail to the address Appellant had given him:

> I'm just keeping in touch with you. We're still working out the financial situation with the equipment, but we are still moving forward with the plan. I'm still looking at an all Latina site with member wish list on videos and pics that are wanted to be seen. Also I've been looking at several sites to get ideas. By the way I've been searching for the horse movie you showed us and wondering where you found it or if you can send me files. I have a girl I'd like to introduce you to later on and we'll talk some trade offs at a later time. Can you give me a quote on a website construction base on the information I gave to you? And can we [illegible] another meeting at your best chance to talk some more ideas? If [illegible] would like we can meet at a club and get some drinks and see some ladies and get some more contacts.

Armendariz received the following reply from Appellant's e-mail address:

I can't really quote you on the cost of designing your website without more specific info on what exactly you wish to show on each page, how different links/pages (to determine bandwidth and space required number of DNS (Domain Names) you will want to use. Each name will have [illegible] registered and renewed yearly about $20/name. Monthly fees for [illegible] hosting and upkeep can be $30-$100/months plus shopping cart fees, depending on what you will choose to host. I attached one clip of the Pony enjoying himself, on good faith. [illegible] can have more when I get to enjoy one of the ladies you offered to introduce to me. You can call me anytime for more info or to set-up another meeting.

A video was attached to the e-mail--the same bestiality video viewed by the officers at Appellant's home. Armendariz specifically testified that he did not alter, change, fabricate, or reword the e-mail and that a printout of the e-mail was a true and correct copy of the e-mail he received from Appellant. When the State offered into evidence the bestiality video (State's Exhibit 1) and the print-out of the e-mail (State's Exhibit 2), Appellant objected that they were untrue and unsubstantiated. In support of his argument, Appellant introduced evidence showing that it is easy to create an e-mail address using someone else's name.[1] The trial court overruled those objections and admitted the exhibits into evidence.

Appellant's twenty-four-year-old son, Miguel Varkonyi, testified that he and his brothers had downloaded pornographic material onto his father's computer and he recalled the "donkey and a woman" video as one of those videos. He had seen this particular video on many computers and he described it as a "viral video" which is a title given to a video when it receives a certain number of "hits" on the internet. Miguel admitted that he did not have the video on his own computer. Miguel, who had worked with his father in the computer business, testified that it was not possible to attach a 140 kilobyte video to an e-mail and send it to a public e-mail address. In addition to Miguel's testimony, Appellant offered the testimony of four customers who testified Appellant had never

---

[1] In an effort to prove his point, Appellant created an e-mail address using the prosecutor's name and sent an obscene picture, purportedly from the prosecutor, to Appellant's e-mail address.

shown them anything obscene or pornographic. The trial court subsequently entered a written order denying Appellant's motion to suppress, stating that the evidence established that Appellant freely admitted the undercover officers into Appellant's home, voluntarily showed them the video alleged to be obscene, and voluntarily transmitted the video as an e-mail attachment. The order expressly states that the court was not persuaded by Appellant's entrapment and technological impossibility arguments. In the same order, the trial court found Appellant guilty as charged in the information.

## ENTRAPMENT

In Issue One, Appellant contends that his prosecution should have been dismissed because it was the result of illegal entrapment.[2] Appellant did not file a written motion to dismiss asserting entrapment as a matter of law but Appellant raised the issue at the pretrial hearing[3] with the consent of the trial court. At that hearing, he argued that the trial court should dismiss the case against him because he was entrapped. The trial court denied Appellant's motion after the trial on the merits had concluded.

Entrapment is a defense to prosecution requiring the defendant to show that he engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. *See* TEX.PEN.CODE ANN. § 8.06(a) (Vernon 2003). Conduct merely affording a person an opportunity to commit an offense does not

_____

[2] Appellant has not challenged the sufficiency of the evidence supporting the fact finder's rejection of his entrapment defense. Appellant's first issue states: "Was the arrest and prosecution of Varkonyi the result of an attempted illegal entrapment?" In footnote 5 of his brief, Appellant argues: "In entrapment cases, the trial court, as the trier of fact, must weigh the evidence and determine whether the defendant was entrapped as a matter of law. *Soto v. State*, 681 S.W.2d 602, 604 (Tex.Crim.App. 1984)." At no point in the discussion of Issue One does Appellant argue that the evidence is legally or factually insufficient to support the fact finder's rejection of his entrapment defense. Consequently, we have interpreted Issue One as arguing only that Appellant proved his entrapment defense as a matter of law.

[3] Because the trial court did not conduct a distinct hearing on the pretrial motions but instead melded the suppression hearing and the trial on the merits, it is difficult to discern where the pretrial hearing ended and the trial on the merits began. Nevertheless, we will address Appellant's entrapment issue as one which was raised and heard pretrial.

constitute entrapment. TEX.PEN.CODE ANN. § 8.06(a).

Normally, a defense such as entrapment is a question for the fact finder to decide unless as a matter of law the accused has established beyond a reasonable doubt that he was entrapped. *Hernandez v. State*, 161 S.W.3d 491, 498 n.12 (Tex.Crim.App. 2005); *Melton v. State*, 713 S.W.2d 107, 113 (Tex.Crim.App. 1986). The issue is usually reserved for the fact finder because it is determined largely by weighing facts and assessing credibility. *Hernandez*, 161 S.W.3d at 498. A defendant may, however, raise the legal issue of entrapment to the trial judge in a pretrial hearing under Article 28.01 of the Code of Criminal Procedure. *Hernandez*, 161 S.W.3d at 498; TEX.CODE CRIM.PROC.ANN. art. 28.01, § 1(9)(Vernon 2006).[4] A defendant is entitled to dismissal of the charges under Section 8.06 of the Penal Code in a pretrial hearing context only when he can establish entrapment as a matter of law with conflict-free, uncontradicted, uncontested, or undisputed evidence. *Hernandez*, 161 S.W.3d at 499. If the facts concerning entrapment are in dispute, there cannot be entrapment "as a matter of law" determined at the pretrial stage. *Id.* It is the defendant, not the State, who must establish beyond a reasonable doubt that he was entrapped. *Id.* At the pretrial stage, the State has no burden to disprove the factual defense of entrapment beyond a reasonable doubt. *Id.* When an entrapment defense is presented in either the pretrial or trial context, the fact finder is authorized to weigh the evidence and draw a conclusion as to whether that evidence establishes entrapment as a matter of law in the pretrial context or as a matter of fact or law in the trial context. *Id.* at 500. A defendant's testimony which is not directly contradicted at a pretrial hearing may nonetheless be "disputed" because the trial judge, as the sole trier of fact, is not required to believe that testimony. *Id.* In such a case, a trial court does not err in overruling a motion to

---

[4] Although Article 28.01 allows the presentation of the entrapment defense in a pretrial motion to dismiss, it is not required. *Hernandez*, 161 S.W.3d at 499 n.14, *citing Bush v. State*, 611 S.W.2d 428, 432 n.1 (Tex.Crim.App. 1981)(op. on reh'g).

dismiss. *Id.*

In reviewing a trial court's denial of a defendant's pretrial motion to dismiss based on entrapment "as a matter of law," an appellate court determines *de novo* whether any rational trier of fact could conclude that the undisputed facts failed to establish all of the elements of entrapment. *Id.* Our review must take into account that the trier of fact was free to accept or reject all or any portion of any witness's testimony. *Id.*

Appellant did not testify at trial. Instead, he sought to establish his entrapment defense through his cross-examination of Officers Bazan and Armendariz. Appellant complains that it was the undercover officers who urged him to "promote the video by asking him to email it to them; that is, the criminal design originated in the mind of the police, not Varkonyi's mind, and induced him to commit a crime."

The State argues that the offense was complete before Appellant e-mailed the video to the police . The information alleged that Appellant, knowing the content and character of the obscene material, promoted or possessed with intent to promote obscene material, to wit: material depicting sexual bestiality. Promotion of obscene material includes its presentation and exhibition. *See* TEX.PEN.CODE ANN. § 43.21(a)(5)(Vernon 2003). The officers testified that they did not ask Appellant for any pornographic material when they were at his home in early July 2004. Instead, Appellant, having been asked by Armendariz whether he had a problem with pornography, presented and exhibited the video to them. The offense was complete at that point, and thus, Officer Armendariz's subsequent e-mail request for the video could not have entrapped Appellant into committing the already-complete offense. Because Appellant failed to prove his entrapment defense as a matter of law, the trial court did not err by denying his motion to dismiss the prosecution. We overrule Issue One.

# AUTHENTICATION

In Issue Two, Appellant contends that the evidence was legally and factually insufficient to sustain his conviction because the State failed to authenticate the e-mails and the attached video evidence admitted as State's Exhibits 1and 2. He also argues that the evidence is inadmissible because the State failed to produce the originals as required by Rules of Evidence 1001 and 1002. In reviewing both the legal and factual sufficiency of the evidence, we consider all the evidence admitted at trial, even improperly admitted evidence. *Moff v. State*, 131 S.W.3d 485, 488 (Tex.Crim.App. 2004). In the event a portion of this evidence was erroneously admitted, the accused may complain on appeal of such error. *Thomas v. State*, 753 S.W.2d 688, 695 (Tex.Crim.App. 1988). If his complaint has merit and the error is reversible, a new trial should be ordered. *Id.* But the fact finder does not act irrationally taking such evidence into account. *See id.* Appellant's complaints regarding the sufficiency of the evidence resulting from the alleged inadmissibility of the e-mail evidence are without merit. We will, however, address his arguments regarding the admissibility of State's Exhibits 1and 2.

## *Preservation of Error*

To preserve an issue for review, a party must timely object and state the grounds for the ruling sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context of the objection. TEX.R.APP.P. 33.1(a)(1)(A). On appeal, Appellant argues that State's Exhibits 1and 2 are inadmissible because they were not properly authenticated and the State did not produce the originals in court as required by Rules 1001 and 1002 of the Texas Rules of Evidence. The only objections made by Appellant at trial to the two exhibits is that they were untrue and unsubstantiated. Appellant's objection that the evidence is "untrue" does not state a legal ground for exclusion of the

evidence. His objection that the evidence is "unsubstantiated" is sufficient to preserve a complaint that the evidence was not properly authenticated. But his objection is insufficient to preserve the argument made on appeal that the copies of the e-mail and video are inadmissible under TEX.R.EVID. 1001 and 1002 because the State failed to produce the originals in court, the admission of a duplicate is unfair, and the State had failed to show that the copies accurately reflected the data contained in a computer.

*Authentication of State's Exhibits 1 and 2*

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex.Crim.App. 2003); *Willover v. State*, 70 S.W.3d 841, 845 (Tex.Crim.App. 2002). We will uphold the trial court's ruling as long as it is within the zone of reasonable disagreement. *Moses*, 105 S.W.3d at 627. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. TEX.R.EVID. 901(a). Subsection (b) of Rule 901 includes a non-exclusive list of examples of authentication or identification conforming with the requirements of this rule. TEX.R.EVID. 901(b). The fourth example is as follows:

(4) *Distinctive characteristics and the like.* Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

TEX.R.EVID. 901(b)(4). Thus, a letter is properly authenticated under Rule 901(b)(4) if its appearance, contents, substance, or other distinctive characteristics, taken in conjunction with circumstances, support a finding that the document is what its proponent claims. TEX.R.EVID. 901(b)(4). The Texas Rules of Evidence Handbook identifies another traditional method of authentication permitted by Rule 901 known as the "reply-letter doctrine." CATHY COCHRAN, TEXAS RULES OF EVIDENCE HANDBOOK, ARTICLE IX: AUTHENTICATION & IDENTIFICATION, at 915-15 (6th ed. 2005). Under this doctrine, a letter received in the due course of mail purportedly in answer to another letter is *prima facie* genuine and admissible without further proof of authenticity. *Id.* A reply letter needs no further authentication because it is unlikely that anyone other than the purported writer would know of and respond to the contents of the earlier letter addressed to him. *Id.* Because the reply-letter doctrine has been applied to telegrams, Judge Cochran reasons that it logically would apply to e-mail communications. *Id.*

Armendariz testified at trial that he received the e-mail and attached video from Appellant in direct response to an e-mail sent by Armendariz to Appellant inquiring whether Appellant would send him the "horse movie" file. Under the reply letter doctrine, the e-mail is authenticated. The e-mail is also authenticated under Rule 901(b)(4). The evidence at trial established that Appellant showed the bestiality video to the officers in his home. In his e-mail sent to Appellant's e-mail address, Armendariz stated that he had been searching for the horse movie "you showed us" and asked whether Appellant would either tell him where he found it or send him the file. In direct response to this e-mail, Appellant replied, "I attached one clip of the Pony enjoying himself . . . ." Armendariz expressly testified that he received the e-mail with the attached video and the officers

identified the video attached to the e-mail as the same one shown to them in Appellant's home. Appellant was in a unique position of knowing that Armendariz's inquiry about the "horse movie" concerned the bestiality video seen when the officers were at Appellant's home. Given the distinctive content of the e-mail and the attached video and the circumstances under which it was received by Armendariz, we cannot conclude that the trial court abused its discretion in deciding that the evidence was authenticated under Rule 901(b)(4). *See Shea v. State*, 167 S.W.3d 98, 105 (Tex.App.--Waco 2005, pet. ref'd)(State, in prosecution for indecency with a child, adequately authenticated six e-mail communications from defendant to victim; victim testified that she came to know defendant's e-mail address because he would call to confirm that she had received an e-mail from him, several messages made reference to defendant's occupation, one message indicated familiarity with victim's locker number, and victim testified that content of e-mail messages was similar to conversations she had had with defendant over the telephone); *Massimo v. State*, 144 S.W.3d 210, 216 (Tex.App.--Fort Worth 2004, no pet.)(trial court acted within its discretion in trial for harassment by electronic communication in concluding that copy of certain e-mail allegedly sent by defendant to victim was sufficiently authenticated, where e-mail referred to altercation between defendant and victim that occurred shortly before e-mail was sent, victim recognized defendant's e-mail address, victim testified that only defendant and few other people knew about things discussed in e-mail, victim testified that way in which e-mail was written was way in which defendant would communicate, and witness testified that she saw defendant send similar threatening e-mail to victim using same vulgarities). Issue Two is overruled.

**SUFFICIENCY OF THE EVIDENCE**

In his third issue, Appellant challenges the legal sufficiency of the evidence to prove that the bestiality video is obscene.[5] Pointing to evidence that the video is considered a "viral video," Appellant argues that its popularity indicates that the community embraces rather than rejects it.

The information alleged that Appellant, knowing the content and character of the obscene material, promoted or possessed with intent to promote obscene material, to wit: material depicting sexual bestiality. Promotion of obscene material includes its presentation and exhibition. *See* TEX.PEN.CODE ANN. § 43.21(a)(5). The term "obscene" is statutorily defined:

(1) 'Obscene' means material or a performance that:

> (A) the average person, applying contemporary community standards, would find that taken as a whole appeals to the prurient interest in sex;
>
> (B) depicts or describes:
>
> > (I) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, sodomy, and sexual bestiality; or
> >
> > (ii) patently offensive representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs; and
>
> (C) taken as a whole, lacks serious literary, artistic, political, and scientific value.

TEX.PEN.CODE ANN. § 43.21(a).

Section 43.21(a)'s definition of obscene comports with the test set forth in *Miller v.*

---

[5] The third issue alleges that the evidence is legally and factually insufficient to prove that the material is obscene. The discussion under Issue Three does not include an argument demonstrating how the evidence is factually insufficient. Further, in his prayer, Appellant only requests that we reverse the judgment of the trial court and render a judgment of acquittal. Therefore, we construe his brief as raising only a legal sufficiency argument.

*California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973). The Penal Code defines "material" to mean anything tangible that is capable of being used or adapted to arouse interest, whether through the medium of reading, observation, sound, or in any other manner, but does not include an actual three dimensional obscene device. TEX.PEN.CODE ANN. § 43.21(a)(2). "Patently offensive" means so offensive on its face as to affront current community standards of decency. TEX.PEN.CODE ANN § 43.21(a)(4).

In determining whether material is "constitutionally obscene," appellate courts are obligated to independently review and evaluate the material in accordance with the three-part test set out in *Miller*. *Castillo v. State*, 79 S.W.3d 817, 826 (Tex.App.--Dallas 2002, pet. ref'd), *citing Andrews v. State*, 652 S.W.2d 370, 383 (Tex.Crim.App. 1983). This three-pronged test requires the court to consider whether: (1) the average person, applying contemporary community standards would find the work, taken as a whole, appeals to the prurient interest in sex; (2) the work depicts or describes in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. *Miller*, 413 U.S. at 24, 93 S.Ct. at 2615; *Andrews*, 652 S.W.2d at 378. Work which does not appeal to the prurient interest, does not depict sexual conduct in a patently offensive way, and does not lack serious literary, artistic, political, or scientific value is constitutionally protected. *See Andrews*, 652 S.W.2d at 384.

Appellant introduced evidence at trial that the bestiality video is considered a "viral video," a description given to a video when it receives an unspecified number of "hits" on the internet. He reasons that because the video is so popular in the internet community, community standards embrace rather than reject the video. Appellant's reliance on the alleged popularity of the video in the world-wide internet community is misplaced. If the appropriate community standard is not a

national one, it is certainly not a world-wide internet standard. *See Miller*, 413 U.S. at 32-33, 93 S.Ct. at 2619-20; *see also Berg v. State*, 599 S.W.2d 802, 805 (Tex.Crim.App. 1980)(rejecting notion that contemporary community standards could be restricted to the territorial limits of Johnson County, and approving a jury charge submitting the issue under "the contemporary community standards of the State of Texas"). Appellant also presented evidence through his son that the video was popular in dorms. While college campuses are one part of the community, they do not define the standard for the entire community. We have reviewed the video under a statewide community standard and find that the average person in Texas would find the images depicting a woman being sexually penetrated by a pony appeals to the prurient interest in sex, depicts sexual conduct in a patently offensive way, and lacks serious artistic or scientific value. Issue Three is overruled.

## CONSTITUTIONAL CHALLENGE

In his final issue, Appellant brings for the first time on appeal a facial challenge to the constitutionality of the Texas obscenity statute because it criminalizes, through its definition of "promote," the transfer of material which can lawfully be used or viewed in private. Appellant bases his constitutional challenge on the right of privacy under the Due Process Clause of the Fourteenth Amendment. The State responds that Appellant's conduct of exhibiting the obscene bestiality video to police in his home and transmitting the video by e-mail are not constitutionally protected activities, and therefore, Section 43.23(c)(1) of the Penal Code was constitutionally applied to him and his conduct.

A facial challenge to a statute is the most difficult because the challenger must establish that no set of circumstances exists under which the statute will be valid. *Santikos v. State*, 836 S.W.2d 631, 633 (Tex.Crim.App. 1992); *Ex parte Dave*, 220 S.W.3d 154, 156 (Tex.App.--Fort Worth 2007, pet. ref'd). Since a statute may be valid as applied to one set of facts and invalid as applied to

another, the challenger must first show that the statute is unconstitutional as applied to him in his situation. *Santikos,* 836 S.W.2d at 633; *Ex parte Dave*, 220 S.W.3d at 156. That the statute may be unconstitutional as applied to others is insufficient to support a facial challenge. *Santikos*, 836 S.W.2d at 633; *Ex parte Dave*, 220 S.W.3d at 156. When we are confronted with an attack on the constitutionality of a statute, we presume that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex.Crim.App. 2002). The burden rests on the individual who challenges the statute to establish its unconstitutionality. *Id.*

State statutes designed to regulate obscene material must be carefully limited, because the First and Fourteenth Amendments prohibit making an individual's private possession of obscene material a crime. *Ex parte Dave*, 220 S.W.3d at 156, *citing Miller v. California*, 413 U.S. 15, 23-24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973) and *Stanley v. Georgia*, 394 U.S. 557, 568, 89 S.Ct. 1243, 1249, 22 L.Ed.2d 542 (1969). Obscene material itself, however, is not protected by the First Amendment. *Ex parte Dave*, 220 S.W.3d at 156, *citing Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 69, 93 S.Ct. 2628, 2641, 37 L.Ed.2d 446 (1973). The Supreme Court has expressly rejected the argument that the constitutionally-protected right to possess obscene material in the privacy of the home creates a correlative right to receive it, transport it, or distribute it. *U.S. v. Orito*, 413 U.S. 139, 141, 93 S.Ct. 2674, 2677, 37 L.Ed.2d 513 (1973); *United States v. 12 200-Ft. Reels of Super 8mm. Film*, 413 U.S. 123, 128, 93 S.Ct. 2665, 2669, 37 L.Ed.2d 500 (1973); *United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 376, 91 S.Ct. 1400, 1408, 28 L.Ed.2d 822 (1971); *see also*, *United States v. Reidel*, 402 U.S. 351, 356, 91 S.Ct. 1410, 1412-13, 28 L.Ed.2d 813 (1971)(holding that constitutionally-protected right to possess obscene material in the privacy of the home does not require that the Court fashion or recognize a constitutional right for commercial purveyors of obscene material to distribute or sell it).

Appellant argues that the United States Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) supports his argument that Section 43.23's definition of "promote" renders the obscenity statute unconstitutional because it criminalizes constitutionally-protected conduct, that is, the possession of obscene material in the privacy of an individual's home. In *Lawrence*, the Supreme Court held unconstitutional a Texas statute which made it a crime for two persons of the same sex to engage in certain intimate sexual conduct. *Id.*, 539 U.S. at 577-78, 123 S.Ct. at 2483-84, 156 L.Ed.2d 508. The Supreme Court held that the right to liberty embodied in the Due Process Clause protects private, consensual sexual conduct between homosexuals from governmental intrusion. *Id.*, 539 U.S. at 578, 123 S.Ct. at 2483-84, 156 L.Ed.2d 508. The court found that the Texas sodomy law impinged on the exercise of that liberty interest. *Id.*, 539 U.S. at 578, 123 S.Ct. at 2484, 156 L.Ed.2d 508.

Although *Lawrence* does not involve the Texas obscenity statute, the Fifth Circuit relied heavily on *Lawrence* in finding a portion of the Texas obscenity statute to be unconstitutional because it criminalized the selling, advertising, giving, or lending of any device designed or marketed for sexual stimulation unless the defendant could prove that the device was sold, advertised, given, or lent for a statutorily-approved purpose. *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 741 (5th Cir. 2008). The Fifth Circuit determined that the statute impermissibly burdened the individual's substantive due process right to engage in private intimate conduct of his or her choosing because an individual is unable to legally purchase a device in Texas. *Id.* The opinion does not include in its analysis any of the Supreme Court cases holding that the constitutionally-protected right to possess obscene material in the privacy of one's home does not give rise to a correlative right to receive the materials or to sell or give it to others. We decline to follow *Reliable Consultants* because we do not read *Lawrence* as overruling this line of authority.

*See Ex parte Dave*, 220 S.W.3d at 159 (holding that *Lawrence* did not overrule *Paris Adult Theatre I v. Slaton*[6] in which the United States Supreme Court upheld a Georgia statute virtually identical to the Texas obscenity statute). Further, we find that *Lawrence* is inapplicable to the instant case because it did not involve the promotion of obscene materials.

The evidence admitted at trial established that Appellant committed two offenses of promotion of obscene material, the first occurring when he presented or exhibited the material to the officers in his home, and the second occurring when he e-mailed the video to Armendariz. Because Appellant did not move for the State to elect upon which of those incidents it sought a conviction, the conviction is supportable under either of the two theories. Appellant's conviction under either theory does not criminalize constitutionally protected conduct. While Appellant's viewing of the material in the privacy of his own home is protected conduct, his exhibition of the material to the undercover police officers in the context of a business transaction involving the employment of Appellant to set up a pornographic website is not. *See Adams v. State*, 804 N.E.2d 1169 (Ind. App. 2004)(rejecting defendant's argument that his conviction for exhibiting obscene materials must be vacated because he displayed the images at his own residence where the evidence showed that the defendant displayed the videos because he desired to make a sale of obscene matter to the undercover police officer in response to showing him the images on the computer). Nor does Appellant have a right to give obscene material to others. Consequently, his transmission of the video as an e-mail attachment is not constitutionally-protected conduct. Section 43.23(c)(1) was constitutionally applied to Appellant and his conduct under the facts of this case. We overrule Issue Four. Having overruled all issues for review, we affirm the judgment of the trial court.

---

[6] 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973).

May 8, 2008

_____

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.

(Publish)