COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

RONALD WAYNE WARREN, § No. 08-11-00029-CR

Appellant, § Appeal from the

v. § Criminal District Court No. 2

THE STATE OF TEXAS, § of Tarrant County, Texas

Appellee. § (TC# 1179579D)

§

## O P I N I O N

Ronald Wayne Warren was convicted of burglary of a habitation and was sentenced by a jury to thirteen (13) years' in prison. In his sole issue on appeal, he argues that the trial court abused its discretion by admitting a DVD into evidence. We affirm.

### Factual Background

Kevin Hickson testified that he took his girlfriend to work at about 11 a.m. on October 3, 2009. When he returned to their apartment approximately fifteen minutes later, the front-door lock had been broken and the door was ajar. He stepped inside and saw that his television had been moved. He stepped back out into the common area and called 9-1-1. While talking to the dispatcher, he noticed a man who was carrying two backpacks which belonged to Hickson, walking toward a white car. Hickson gave the dispatcher the license plate number for the white car. The man started back up the stairway to Hickson's apartment, which was on the third floor. In a loud voice, Hickson told the dispatcher that there was a robbery in progress. The man turned around, went back to the white car, and left.

Using the license plate number provided by Hickson, the police determined that the white

car was registered in Warren's name.   Warren was in the white car when he was arrested.

**Admission of DVD**

The apartment complex had motion-activated security cameras on all of its stairwells. When a camera detects motion, it records for twenty seconds.   It records in twenty second intervals as long as motion continues.   To view any captured images, the SD card is removed and inserted into an SD reader that is attached to a computer.

After his apartment was burglarized, Hickson went to the apartment complex office and asked to review the security camera recordings.   He and the maintenance supervisor, Julio Ramirez, watched the recordings in the apartment complex office.   Hickson spotted four images, or "clips," that he thought were relevant, and Ramirez copied those images onto a DVD.   Hickson took the DVD home, copied it to a thumb drive, and then delivered the DVD to the police.   He testified that he did not alter the DVD in any way before turning it over to the police.   The DVD was "nonrewritable," meaning it could not be edited.

The DVD was admitted into evidence over Warren's objection.   It showed Warren on the stairwell, carrying Hickson's backpacks.

On appeal, Warren argues that the State failed to authenticate the DVD.   We review the admission of evidence for abuse of discretion.   *See Druery v. State*, 225 S.W.3d 491, 503 (Tex.Crim.App. 2007); *Varkonyi v. State*, 276 S.W.3d 27, 34 (Tex.App.--El Paso 2008, pet. ref'd). A trial court does not abuse its discretion if it "reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified."   *Druery*, 225 S.W.3d at 502.

Texas Rule of Evidence 901 governs the authentication of evidence.   It states, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied

2

by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX.R.EVID. 901(a). A recording may be authenticated through testimony that it "is what it is claimed to be." TEX.R.EVID. 901(b)(1); *see also Angleton v. State*, 971 S.W.2d 65, 67-8 (Tex.Crim.App. 1998); *Page v. State*, 125 S.W.3d 640, 648 (Tex.App.--Houston [1st Dist.] 2003, pet. ref'd).

In this case, Ramirez's testimony explained how the security cameras work. Testimony also established that Ramirez removed the SD card from the camera at issue, reviewed its contents with Hickson, and copied four images onto a DVD, which was given to Hickson. Hickson then gave the DVD to the police. Ramirez testified that the camera at issue was capable of making true and accurate recordings and that the DVD contained a true and accurate depiction of images taken by the camera. He stated that he did not "alter or change the images as [he] initially saw them from the original SD card in any way." Nor did he "remove bits of time out of them." Ramirez reviewed the DVD before trial and determined that it was "a true and accurate depiction and recording of the four images that [he] saved off that SD card." In addition, Hickson was asked whether he altered the DVD that he received from maintenance personnel. He answered, "No, it was an exact copy on a nonrewritable DVD that maintenance had given me, containing four clips." This testimony was sufficient to authenticate the DVD.

Warren points out that the State failed to establish the chain of custody for the DVD. The Texas Rules of Evidence do not mention chain of custody, but the concept is subsumed within Rule 901. *See Druery*, 225 S.W.3d at 503 & n.30. If there is no evidence of tampering or fraud, problems in the chain of custody go to the weight, not the admissibility, of evidence. *Id.* at 503-04. Therefore, the State's failure to establish the chain of custody does not render the DVD

3

inadmissible unless there is evidence of tampering or fraud. Warren suggests that there is evidence of tampering, or possibly a technological malfunction, because there were gaps on the DVD.

Warren's trial attorney filed a pretrial motion to suppress the DVD. Therein, counsel asserted that the security camera "captures video 24 hours a day and records it to a computer hard drive within the apartments' security area." With this understanding as to how the security camera worked, counsel contended that there were three "gaps" in the DVD. He described the gaps as follows:

Gap Number 1        is 11:19:51 a.m. to 11:19:56 a.m.;
Gap Number 2        is 11:20:16 a.m. to 11:20:45 a.m.; and
Gap Number 3        is 11:21:05 a.m. to 11:21:55 a.m.

Counsel raised this issue again during voir dire of Ramirez:

Q.     Okay. And you said if there's motion, it records for?
A.     20 seconds.

.          .          .

Q.     If there were a motion, for example, that made a depiction of someone and it was only five seconds, then that would be a camera malfunction, would it not?

.          .          .

A.     Yeah, I mean, it doesn't matter. It's going to run 20 seconds no matter what. As soon as it detects that motion, whether somebody's standing in front of it or whatever, it's going to run the 20 seconds and cut off, unless there is a motion to reactivate it to come back on to -- to record again.
Q.     And if somebody comes back and it only records for five seconds?
A.     I've never seen it record for five seconds, so I -- I can't speak on that.

Counsel then asked Ramirez if he noticed that the DVD contains a "gap" from 11:19:51 to 11:19:56. Ramirez testified that he could not "recall the times exactly," but he reiterated that the

camera records in twenty-second "clips" and "[i]t won't do it in a full ongoing clip."   Questioning continued as follows:

> Q.      Yeah.   But if somebody walks by and it only goes for five seconds, then that's a malfunction, is it not?
> A.      It would be a malfunction, but I've never seen that happen . . . .
>
> .                    .                    .
>
> Q.      Okay.   On this particular video when you watched it . . . did you write down the times, by any chance?
> A.      No, sir.
> Q.      Wait a minute.   I'm talking about gaps.   Just --
>         Strike that.   Your Honor, I don't want to mislead the Court.   I -- that is not exactly what happened.   I'm misreading this.

Thus, it appears that counsel initially believed that there were gaps in the video because he thought that the camera recorded continuously.   Testimony at trial revealed that it only recorded in twenty-second increments and that Ramirez only copied four particular clips from the camera onto the DVD.   Looking at the times set out in the pretrial motion, one can see that the DVD captured full, twenty-second clips (e.g., 11:19:56 to 11:20:16 and 11:20:45 to 11:21:05).   The so-called "gaps" (e.g., the five-second space from 11:19:51 to 11:19:56) appear to be periods when the camera was not recording or was recording images that were not copied to the DVD.   Trial counsel seemed to realize this as he was questioning Ramirez on *voir dire*.

The State never contended that the DVD was an original recording, that it depicted a continuous sequence of events, or that it included all of the images captured by the camera on October 3, 2009.   Hickson and Ramirez clearly testified that they only copied four images or clips from the original SD card and that they chose those four images or clips because Hickson believed that they showed the perpetrator.   Therefore, the purported gaps do not indicate that the DVD was

5

not what the State claimed it to be. *See* TEX.R.EVID. 901(a), (b)(1). Warren does not suggest that the failure to include every image from October 3, 2009 rendered the DVD inadmissible. *See Ali v. State*, 742 S.W.2d 749, 754 (Tex.App.--Dallas 1987, pet. ref'd)("The existence of minor gaps in a tape does not affect the reliability and trustworthiness of the evidence, nor render it per se inadmissible."); c*f. Webb v. State*, 760 S.W.2d 263, 276 (Tex.Crim.App. 1988)(where officer sorted through various channels on original reel-to-reel tape that simultaneously recorded multiple incoming police calls, discerned which calls where relevant to the case, and then re-recorded some of the simultaneous dialogues sequentially onto a cassette, no abuse of discretion to admit cassette into evidence even though alteration was not accidental).

Warren also notes that there is no evidence regarding the reliability of the computer used to copy the images onto the DVD. Ramirez testified that the cameras' SD cards were preset with a date and time stamp. New SD cards are inserted into a laptop computer, which transfers its date and time information to the SD cards. Warren contends that "the gaps found in between the clips may have indicated a laptop malfunction and the time frame on the [SD] chip may have not been an accurate reflection of the date and time that [he] had been in that stairwell." This is pure speculation, unsupported by any evidence. As such, it does not raise an inference of tampering.

### Conclusion

The trial court did not abuse its discretion by admitting the DVD into evidence. Warren's sole issue is overruled, and the judgment of the trial court is affirmed.


February 29, 2012

CHRISTOPHER ANTCLIFF, Justice


6

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)