COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

 


 
 
  
 RONALD WAYNE WARREN,
  
                             Appellant,
  
 v.
  
 THE STATE OF TEXAS,  
  
                             Appellee. 
  
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
 §
 
  
 
 
  
 No.
 08-11-00029-CR
  
 Appeal
 from the
  
 Criminal
 District Court No. 2
  
 of
 Tarrant County, Texas 
                                     
 (TC#
 1179579D) 
 
 


O P I N I O N

            Ronald Wayne Warren was convicted of
burglary of a habitation and was sentenced by a jury to thirteen (13) years’ in
prison.  In his sole issue on appeal, he
argues that the trial court abused its discretion by admitting a DVD into
evidence.  We affirm.

Factual Background

            Kevin Hickson testified that he
took his girlfriend to work at about 11 a.m. on October 3, 2009.  When he returned to their apartment
approximately fifteen minutes later, the front-door lock had been broken and
the door was ajar.  He stepped inside and
saw that his television had been moved. 
He stepped back out into the common area and called 9-1-1.  While talking to the dispatcher, he noticed a
man who was carrying two backpacks which belonged to Hickson, walking toward a
white car.  Hickson gave the dispatcher
the license plate number for the white car. 
The man started back up the stairway to Hickson’s apartment, which was
on the third floor.  In a loud voice,
Hickson told the dispatcher that there was a robbery in progress.  The man turned around, went back to the white
car, and left.

            Using the
license plate number provided by Hickson, the police determined that the white
car was registered in Warren’s name.  Warren
was in the white car when he was arrested.

Admission of DVD

            The apartment
complex had motion-activated security cameras on all of its stairwells.  When a camera detects motion, it records for
twenty seconds.  It records in twenty
second intervals as long as motion continues. 
To view any captured images, the SD card is removed and inserted into an
SD reader that is attached to a computer.

After his apartment was
burglarized, Hickson went to the apartment complex office and asked to review
the security camera recordings.  He and
the maintenance supervisor, Julio Ramirez, watched the recordings in the
apartment complex office.  Hickson
spotted four images, or “clips,” that he thought were relevant, and Ramirez
copied those images onto a DVD.  Hickson
took the DVD home, copied it to a thumb drive, and then delivered the DVD to
the police.  He testified that he did not
alter the DVD in any way before turning it over to the police.  The DVD was “nonrewritable,” meaning it could
not be edited.

The DVD was admitted into evidence
over Warren’s objection.  It showed
Warren on the stairwell, carrying Hickson’s backpacks.

On appeal, Warren argues that the
State failed to authenticate the DVD.  We
review the admission of evidence for abuse of discretion.  See Druery
v. State, 225 S.W.3d 491, 503 (Tex.Crim.App. 2007); Varkonyi v. State, 276 S.W.3d 27, 34 (Tex.App.--El Paso 2008, pet.
ref’d).  A trial court does not abuse its
discretion if it “reasonably believes that a reasonable juror could find that
the evidence has been authenticated or identified.”  Druery,
225 S.W.3d at 502.

Texas Rule of Evidence 901 governs
the authentication of evidence.  It
states, “The
requirement of authentication or identification as a condition precedent to
admissibility is satisfied by evidence sufficient to support a finding that the
matter in question is what its proponent claims.”  Tex.R.Evid.
901(a).  A recording may be authenticated
through testimony that it “is what it is claimed to be.”  Tex.R.Evid. 901(b)(1); see
also Angleton v. State, 971 S.W.2d 65, 67-8 (Tex.Crim.App. 1998); Page v. State, 125 S.W.3d 640, 648
(Tex.App.--Houston [1st Dist.] 2003, pet. ref’d).

In this case, Ramirez’s testimony explained
how the security cameras work.  Testimony
also established that Ramirez removed the SD card from the camera at issue,
reviewed its contents with Hickson, and copied four images onto a DVD, which
was given to Hickson.  Hickson then gave
the DVD to the police.  Ramirez testified
that the camera at issue was capable of making true and accurate recordings and
that the DVD contained a true and accurate depiction of images taken by the
camera.  He stated that he did not “alter
or change the images as [he] initially saw them from the original SD card in
any way.”  Nor did he “remove bits of
time out of them.”  Ramirez reviewed the
DVD before trial and determined that it was “a true and accurate depiction and
recording of the four images that [he] saved off that SD card.”  In addition, Hickson was asked whether he
altered the DVD that he received from maintenance personnel.  He answered, “No, it was an exact copy on a nonrewritable
DVD that maintenance had given me, containing four clips.”  This testimony was sufficient to authenticate
the DVD.

            Warren
points out that the State failed to establish the chain of custody for the
DVD.  The Texas Rules of Evidence do not
mention chain of custody, but the concept is subsumed within Rule 901.  See
Druery, 225 S.W.3d at 503 & n.30. 
If there is no evidence of tampering or fraud, problems in the chain of
custody go to the weight, not the admissibility, of evidence.  Id.
at 503-04.  Therefore, the State’s
failure to establish the chain of custody does not render the DVD inadmissible
unless there is evidence of tampering or fraud. 
Warren suggests that there is evidence of tampering, or possibly a
technological malfunction, because there were gaps on the DVD.

Warren’s trial attorney filed a
pretrial motion to suppress the DVD. 
Therein, counsel asserted that the security camera “captures video 24
hours a day and records it to a computer hard drive within the apartments’
security area.”  With this understanding
as to how the security camera worked, counsel contended that there were three
“gaps” in the DVD.  He described the gaps
as follows:

Gap Number 1            is
11:19:51 a.m. to 11:19:56 a.m.;

Gap Number 2            is
11:20:16 a.m. to 11:20:45 a.m.; and

Gap Number 3            is
11:21:05 a.m. to 11:21:55 a.m.

 

Counsel raised this issue again during voir dire of Ramirez:

Q.        Okay.  And you said if there’s motion, it records
for?

A.        20 seconds.

 

.              
.               .

 

Q.        If there were a motion, for example,
that made a depiction of someone and it was only five seconds, then that would
be a camera malfunction, would it not?

 

.               .               .

 

A.        Yeah, I
mean, it doesn’t matter.  It’s going to
run 20 seconds no matter what.  As soon
as it detects that motion, whether somebody’s standing in front of it or
whatever, it’s going to run the 20 seconds and cut off, unless there is a
motion to reactivate it to come back on to -- to record again.

Q.        And if
somebody comes back and it only records for five seconds?

A.        I’ve never
seen it record for five seconds, so I -- I can’t speak on that.

 

Counsel
then asked Ramirez if he noticed that the DVD contains a “gap” from 11:19:51 to
11:19:56.  Ramirez testified that he
could not “recall the times exactly,” but he reiterated that the camera records
in twenty-second “clips” and “[i]t won’t do it in a full ongoing clip.”  Questioning continued as follows:

Q.        Yeah.  But if somebody walks by and it only goes for
five seconds, then that’s a malfunction, is it not?

A.        It would be
a malfunction, but I’ve never seen that happen . . . .

 

.               .               .

 

Q.        Okay.  On this particular video when you watched it
. . . did you write down the times, by any chance?

A.        No, sir.

Q.        Wait a
minute.  I’m talking about gaps.  Just -- 

Strike that.  Your
Honor, I don’t want to mislead the Court. 
I -- that is not exactly what happened. 
I’m misreading this.

 

            Thus, it
appears that counsel initially believed that there were gaps in the video
because he thought that the camera recorded continuously.  Testimony at trial revealed that it only recorded
in twenty-second increments and that Ramirez only copied four particular clips
from the camera onto the DVD.  Looking at
the times set out in the pretrial motion, one can see that the DVD captured
full, twenty-second clips (e.g., 11:19:56 to 11:20:16 and 11:20:45 to 11:21:05).  The so-called “gaps” (e.g., the five-second space
from 11:19:51 to 11:19:56) appear to be periods when the camera was not
recording or was recording images that were not copied to the DVD.  Trial counsel seemed to realize this as he
was questioning Ramirez on voir dire.

The State never contended that the
DVD was an original recording, that it depicted a continuous sequence of
events, or that it included all of the images captured by the camera on October
3, 2009.  Hickson and Ramirez clearly
testified that they only copied four images or clips from the original SD card and
that they chose those four images or clips because Hickson believed that they
showed the perpetrator.  Therefore, the
purported gaps do not indicate that the DVD was not what the State claimed it
to be.  See Tex.R.Evid.
901(a), (b)(1).  Warren does not suggest
that the failure to include every image from October 3, 2009 rendered the DVD
inadmissible.  See Ali v. State, 742 S.W.2d 749, 754 (Tex.App.--Dallas 1987, pet.
ref’d)(“The existence of minor gaps in a tape does not affect the reliability
and trustworthiness of the evidence, nor render it per se inadmissible.”); cf. Webb v. State, 760 S.W.2d 263, 276
(Tex.Crim.App. 1988)(where officer sorted through various channels on original
reel-to-reel tape that simultaneously recorded multiple incoming police calls,
discerned which calls where relevant to the case, and then re-recorded some of
the simultaneous dialogues sequentially onto a cassette, no abuse of discretion
to admit cassette into evidence even though alteration was not accidental).

Warren also notes that there is no evidence
regarding the reliability of the computer used to copy the images onto the DVD.  Ramirez testified that the cameras’ SD cards
were preset with a date and time stamp.  New
SD cards are inserted into a laptop computer, which transfers its date and time
information to the SD cards.  Warren
contends that “the gaps found in between the clips may have indicated a laptop
malfunction and the time frame on the [SD] chip may have not been an accurate
reflection of the date and time that [he] had been in that stairwell.”  This is pure speculation, unsupported by any
evidence.  As such, it does not raise an
inference of tampering.

Conclusion

            The trial
court did not abuse its discretion by admitting the DVD into evidence.  Warren’s sole issue is overruled, and the
judgment of the trial court is affirmed.

 

 

February 29, 2012

                                                                        CHRISTOPHER
ANTCLIFF, Justice

 

Before McClure, C.J., Rivera, and
Antcliff, JJ.

 

(Do Not Publish)